810 F.2d 378
 124 L.R.R.M. (BNA) 2431, 55 USLW 2418,
7 Fed.R.Serv.3d 1224
 Marcos SKEVOFILAX, Louise Skevofilax, and Michael Michaels
v.
Sergeant William QUIGLEY, Patrolman, Charles L. Fekete,
Patrolman Dominick Semenza, Patrolman Fred Galati, Patrolman
Roger Boettinger, Patrolman Donald Merker, Patrolman William
Revill, Sergeant Louis La Plaga, Sergeant Harold Thomas,
individually, and as police officers of the Police
Department of Edison Township, New Jersey, William T.
Fisher, individually and as Chief of the Police Department
of Edison Township, New Jersey, Township of Edison, New
Jersey, the Captain's Wheel, Inc. and George Leontarakis.
Appeal of TOWNSHIP OF EDISON, Appellant.
 No. 85-5300.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 6, 1985.
Argued in Banc Nov. 13, 1986.
Decided Jan. 22, 1987.
 
 Frank M. Ciuffani (argued), Wilentz, Goldman & Spitzer, Woodbridge, N.J., for Edison Tp.
 Ira Leitel (argued), Carol Mellor, Halbert & Abramovitz, New York City, for appellees.
 George F. Hendricks, New Brunswick, N.J., for Quigley, Semenza and fekete.
 Argued Dec. 6, 1986.
 Before ADAMS, GIBBONS and STAPLETON, Circuit Judges.
 Argued in Banc Nov. 13, 1986.
 Before GIBBONS, Chief Judge, SEITZ, ADAMS,* WEIS, HIGGINBOTHAM, SLOVITER, BECKER, STAPLETON, MANSMANN, and ALDISERT, Circuit Judges.
 GIBBONS, Chief Judge:
 
 
 1
 The Township of Edison, New Jersey appeals from a district court post-judgment order directing the township to pay a judgment entered in favor of Marcos and Louise Skevofilax and Michael Michaels against three co-defendant police officers employed by the township. The Skevofilaxes and Michaels obtained separate damage awards in the district court against both the individual police officers and the township.[1] Those awards are not challenged. At the time of the events giving rise to the lawsuit, the township employed the police officers under the terms of a collective bargaining agreement that provided that the township would provide "the necessary means for the defense" in any action arising out of or incidental to the performance of their duty. The collective bargaining agreement also provided that
 
 
 2
 [i]n the event of a judgment against a member of the bargaining unit arising out of or incidental to the performance of his duty, the Employer agrees to pay for said judgment or arrange for the payment of said judgment.
 
 
 3
 The collective bargaining agreement further provided that the employer
 
 
 4
 agrees to continue to maintain in full force and effect all [liability] insurance now provided by the Employer for the benefit of, and covering Employees of the Employer and specifically Employees who are members of the bargaining unit covered by this Agreement.
 
 
 5
 The record before us makes it clear that the township contracted for liability insurance. We are called upon to decide whether, in light of the provisions of the collective bargaining agreement, the district court properly ordered the township to satisfy the judgments rendered against the individual defendant police officers.
 
 I.
 
 6
 At the heart of this appeal lies a disagreement amongst the insurance carrier, the township, and the individual police officers. After the district court entered judgment in favor of the plaintiffs, the carrier refused to pay either the $74,964.14 award against the township or the awards totaling $563,457.94 against the police officers. The carrier apparently took the position that because the conduct of the police officers violated the criminal law of New Jersey, any indemnification agreement, embodied either in a collective bargaining agreement or in an insurance contract, was void as a violation of New Jersey public policy. Although that ground for resisting payment had no relevance to the judgment against the township for negligence, the carrier nevertheless refused to pay the judgment against the township unless it first obtained from the officers a release of any right to indemnification they had under the collective bargaining agreement.
 
 
 7
 Since no payment was forthcoming, the plaintiffs, acting pursuant to Rule 69 of the Federal Rules of Civil Procedure, caused a writ of execution to be levied by the United States Marshal upon the township's bank account. At the same time and acting pursuant to the same Rule, they commenced garnishment proceedings upon the salaries of the police officers. In conjunction with these latter proceedings the district court held a hearing on April 15, 1985, at which time the plaintiffs notified the court that the police officers had commenced in the New Jersey Superior Court an action against the township to compel it to honor the indemnity undertaking contained in the collective bargaining agreement. They also notified the district court that the judgment against the township remained unpaid.
 
 
 8
 At the district court's suggestion the plaintiffs subsequently obtained and served upon the township an order directing it to show cause why it should not pay the judgments rendered against the individual police officers. The order provided for its service on the attorneys for the defendants on or before April 22, 1985, together with the papers on which the moving parties relied. These papers included the affidavit of Rafael Abramovitz, an attorney for the plaintiffs. The affidavit asserts that the collective bargaining agreement obliges the township, as a matter of contract, to pay the outstanding judgments against the individual police officers. Attached to the affidavit is a copy of the relevant portions of the collective bargaining agreement between the township and its policemen. Also attached is a copy of the township's resolution implementing the collective bargaining agreement by authorizing the retention at township expense of attorneys for the defendant police officers in connection with an indictment growing out of the same incident giving rise to the suit. The resolution specifically acknowledged that "all of these defendants were police officers on active duty at the time of the incident charged in the indictment." Joint Appendix at 28.
 
 
 9
 The plaintiffs also served and filed a memorandum of law in support of their motion for an order compelling the township to pay the judgment against the police officers. That memorandum addressed the court's jurisdiction to issue such an order, and the township's contractual obligation to indemnify the officers.
 
 
 10
 When served with the order to show cause and supporting papers, the defendant police officers moved in writing to join in the plaintiffs' motion. In support of the plaintiffs' motion, the officers supplied to the district court and to counsel for the township copies of the brief they had filed in the New Jersey court in support of their own motion for summary judgment on their claim for contract indemnification.
 
 
 11
 On the return date of the order to show cause the township appeared, represented by two attorneys. One, Peter DeSarno, was the regular township attorney, and the other, Martin McGowan, was a member of the firm that the insurance carrier had retained on behalf of the defendants. The police officers had their own counsel. Neither DeSarno nor McGowan filed papers in opposition to the relief sought by the plaintiffs, nor did they request additional time to do so. Neither suggested that the district court should abstain from deciding any legal issue that might have been resolved in the then-pending state court action. Both addressed the merits of the motion.
 
 
 12
 The township argued that the district court did not have jurisdiction to order the township to pay the judgments rendered against the individual defendants. Alternatively, it contended that the indemnity agreement in the collective bargaining agreement was void under New Jersey law. It did not claim that there were any issues of material fact concerning the construction of the indemnification clause. The record is unambiguous in this respect. Mr. DeSarno spoke on behalf of the township with respect to the indemnification claims. His argument with respect to the collective bargaining agreement, in full, was as follows:
 
 
 13
 THE COURT: What about your collective bargaining agreement? What did you do with that[?]
 
 
 14
 MR. DE SARNO: It has to be read in connection with the statute, Judge.
 
 
 15
 THE COURT: Oh, you mean you make [an] agreement with your employees, and then you later take it and shove it at them [like] that[?]
 
 
 16
 MR. DE SARNO: Judge, it is strictly a state matter. The Moya [v. City of New Brunswick, 90 N.J. 491, 448 A.2d 999 (1982) ] case settles the issues. The Moya case talks about when ... officers are entitled to be represented[;] it talks inferentially about the obligations that may be the obligation[s] of the municipality. This is willful, wanton action. If there is coverage, I have suggested to the counsel for the officers, as a matter of fact, who is taking the burden of these plaintiffs, that he ought to join the carrier. There might be some coverage, but to say that the Township itself directly is liable, I think is incorrect, and it is against all the law of New Jersey.
 
 
 17
 THE COURT: What? Your collective bargaining agreement?
 
 
 18
 MR. DE SARNO: What about it, Judge?
 
 
 19
 THE COURT: Would you please explain to me the effect of a collective bargaining agreement on this?
 
 
 20
 MR. DE SARNO: The collective bargaining agreement merely recites the statute, it talks about obligations, you have to read it in the context of the whole position, 40(a). It really recites the statute about whether they are entitled to be represented. Then it goes on to say that the first part of that section they pulled out wasn't put into the brief, I have it in brief which I don't have but when you read it all in context, what it suggests, and I suggest this to your Honor, collective bargaining agreement is not dispositive of ultimately the issue in this case. It depends what the Constitution permits us to do and what other statutory authority permits us to do. It does not permit us to pay this kind of judgment.
 
 
 21
 THE COURT: "In the event of a judgment against a member of the bargaining unit arising out of or incidental to the performance of his duty, the employer agrees to pay for said judgment or arrange for the payment of said judgment." What could be clearer than that[?]
 
 
 22
 MR. DE SARNO: Assuming that it could be done within the framework of the Constitution of New Jersey, and when the statutory authority of a municipality. You have to assume that, Judge, and you can't do it.
 
 
 23
 THE COURT: You mean you entered into [an] agreement with your employees violative of both the Constitution and the statute[?]
 
 
 24
 MR. DE SARNO: That is not unusual, Judge, in collective bargaining agreements.
 
 
 25
 THE COURT: Oh, Mr. DeSarno.
 
 
 26
 MR. DE SARNO: There are not a managerial things that contracts are not enforceable. You are reading it too strictly. You are not understanding the framework of the state law that surrounds itself.
 
 
 27
 Joint Appendix at 100-02.
 
 
 28
 The colloquy between court and counsel discloses clearly that the court understood counsel to be arguing not that the indemnity clause on which plaintiffs relied was in fact inapplicable, but that, assuming it was, the clause was illegal. The court's understanding of the township's argument was reiterated later in the hearing, when Mr. Abramovitz, the plaintiffs' attorney observed:
 
 
 29
 MR. ABRAMOVITZ: Yes. If he is challenging the clear and obvious clause in the contract, I think the words defeat him. The contract is beyond dispute.
 
 
 30
 THE COURT: I think his argument, and I could be wrong, but I think his argument is, you know, the contract is fine, which the laws of the State of New Jersey say that they are not required to compensate for. I think that is his argument.
 
 
 31
 Id. at 105-06. Mr. DeSarno made no objection to this characterization of his position on the contract. No issue of contract interpretation was ever clearly tendered to the district court.
 
 
 32
 Mr. DeSarno did contend that the district court should not decide the indemnity issue, but that argument appears to have been addressed to the township's jurisdictional contention. From what appears in the transcript of the argument, the township seems to have urged that because the indemnification question had not been litigated during the trial, it could not be litigated in a proceeding under Fed.R.Civ.P. 69. The following exchange occurred:
 
 
 33
 MR. DE SARNO: But your Honor, the judgment you are enforcing is not against the Township of Edison. That is the problem. There was never a judgment entered against the township except in one respect. Now you--
 
 
 34
 THE COURT: I can enforce it against the Township of Edison.
 
 
 35
 MR. DE SARNO: You are litigating an issue that was never raised in the trial before, your Honor. It is a separate, distinct issue.
 
 
 36
 THE COURT: It was never an issue in the trial.
 
 
 37
 MR. DE SARNO: It was never an issue, that's right.
 
 
 38
 THE COURT: Why should it have been an issue in the trial? Who is going to pay an obligation that nobody doubted the Township of Edison was going to pay, or its carrier?
 
 
 39
 Joint Appendix at 103.
 
 
 40
 The court explained that at trial it had been stipulated that the police officers had been acting in the course of their duties, and without objection the court instructed the jury as follows:
 
 
 41
 I charge you that the defendant police officers do not contest the facts that whatever actions they took with respect to plaintiffs Marcos Skevofilax and Michael Michaels, they did so in their capacity as officers of the police force of the Township of Edison.
 
 
 42
 The township could have objected both to the stipulation and to the instruction, since they bore not only on the fourteenth amendment state action issue but also on the state law negligence claim against it. It was the trial court's recollection that the attorney for the township stipulated and agreed to the instruction. The township attorney contended otherwise, but offered no supporting affidavit or transcript reference. The court chose not to resolve the dispute over the stipulation, however, but instead ruled that as a matter of law the indemnity agreement applied.
 
 
 43
 Having rejected the township's jurisdictional arguments and its New Jersey public policy arguments, the district court ordered the township to do the following:
 
 
 44
 a) To pay and satisfy the portion of said judgment entered against the individual police officers in favor of plaintiff Marcos Skevofilax for compensatory damages, as reduced by the remittitur in the sum of $296,700.19;
 
 
 45
 b) To pay and satisfy the portion of said judgment entered against the individual police officers in favor of Marcos Skevofilax in the amount of $55,236.75, being the judgment for compensatory damages as reduced by the remittitur entered by reason of malicious prosecution;
 
 
 46
 c) To pay and satisfy the portion of the said judgment entered against the Township of Edison in favor of Marcos Skevofilax in the amount of $74,964.14, for compensatory damages for the negligence of said Township[;]
 
 
 47
 d) To pay and satisfy the portion of said judgment entered against the individual police officers in favor of Michael Michaels in the amount of $11,000.00 for compensatory damages for the negligence of said Township[;]
 
 
 48
 e) To pay and satisfy the portion of said judgment entered against the individual police officers in favor of Michael Michaels in the amount of $1,000.00 being the judgment for compensatory damages for malicious prosecution[;]
 
 
 49
 f) To pay the plaintiff the sum of $3,048.70 which is the amount entered by the Clerk of the Court for costs in this action;
 
 
 50
 g) To pay all above stated sums with interest at the rate of 11.74% from May 31, 1984, being the date of entry of judgment, to the present[;]
 
 
 51
 h) To pay to the plaintiffs the sum of $199,521.00, being the amount of attorneys fees awarded by this Court[;]
 
 
 52
 i) To pay to the plaintiffs the sum of $5,706.45, being the amount of disbursements previously awarded by this Court[;]
 
 
 53
 j) To pay the sums listed in h and i hereof, with interest at the rate of 11.74% from November 28, 1984[;]
 
 
 54
 k) To pay to plaintiff's [sic] additional attorneys fees and disbursements in the amount of $3,763.00.
 
 
 55
 Skevofilax v. Quigley, Civ. Action No. 79-2783 (D.N.J. April 25, 1985) (order).
 
 II.
 
 56
 The township objects to that portion of the order requiring it to pay the judgments rendered against the individual officers.[2] It advances the same arguments that it proffered to the district court--that the district court lacked jurisdiction to enter the order and that, even if the court had the requisite jurisdiction, it erred in holding that the indemnity provision in the collective bargaining agreement was enforceable with respect to the instant judgment.[3]
 
 A.
 
 57
 The township's jurisdictional argument starts with the preamble to the district court order, which expressly referred to Rules 69 and 70 of the Federal Rules of Civil Procedure. That reference, the township urges, confines the "jurisdictional" dispute to an inquiry into the district court's authority to issue orders in aid of enforcement of its judgment.
 
 
 58
 The appellees respond that even if one looks only at the court's authority to enforce its judgment that authority is broad enough to sustain the district court order. They point out that Rule 69 cross-references to "procedings supplementary to and in aid of judgments" of the state in which the district court is held. In light of this language and New Jersey law, they contend, Rule 69 authorizes a district court to order a debtor of a judgment debtor to pay a judgment rendered against the judgment debtor.
 
 
 59
 The New Jersey statutory scheme for the enforcement of a judgment against rights and credits of a judgment debtor is clear:
 
 
 60
 Rights and credits of a defendant in execution ... may be levied upon, taken and sold or collected by virtue of such execution....
 
 
 61
 N.J.Stat.Ann. Sec. 2A:17-59 (West 1952).
 
 
 62
 In lieu of a sale, the officer levying the execution may, in his own name as such officer, liquidate such rights and credits by collection, or, with the assent of the judgment creditor and subject to the provisions of this article, in any other manner.
 
 
 63
 N.J.Stat.Ann. Sec. 2A:17-61 (West 1952).
 
 
 64
 For the purpose of liquidation the officer levying the execution shall, at the request of the judgment creditor, sue or take proper judicial proceedings, in his own name as such officer, to obtain such recovery or relief as defendant or a receiver of defendant would be entitled to.
 
 
 65
 N.J.Stat.Ann. Sec. 2A:17-62 (West 1952). This last-quoted provision authorizes the adjudication of a dispute between a judgment debtor and a third party so as to assure the satisfaction of a judgment. See Barrett Co. v. United Building & Construction Co., 5 N.J.Misc. 87, 88, 135 A. 477, 478 (1926); Sebring v. Pratt, 91 N.J.L. 393, 393-94, 103 A. 999, 999 (1918); Johnson v. Lyons, 103 N.J.Eq. 315, 143 A. 373, 374 (Ch. 1928).
 
 
 66
 The township urges that the liquidation procedure prescribed by section 2A:17-62 may not be utilized for the enforcement of a federal court judgment because that statutory provision cannot enlarge federal court jurisdiction. Obviously, however, neither the liquidation provision in section 2A:17-62, nor the more summary remedy in section 2A:17-59, nor any other New Jersey statute has anything at all to do with federal court jurisdiction. Those statutes, however, constitute "[t]he practice and procedure [of execution] of the state in which the district court is held." Fed.R.Civ.P. 69(a). By virtue of Rule 69 the same relief is available in federal court for the satisfaction of a federal court judgment as would be available in a state court. Rule 69 does not contemplate that the holders of federal judgments must resort to state tribunals for their enforcement. Green v. Benson, 271 F.Supp. 90, 93 (E.D.Pa.1967) (holding that district court had ancillary jurisdiction to adjudicate garnishment action by a judgment creditor against the nonparty insurer of a judgment debtor).
 
 
 67
 It should be noted that a holding that a federal tribunal lacks ancillary jurisdiction to enforce its own judgment would be equally applicable to the district court's effort to garnish the township's bank account. The bank is in the same debtor relationship to the township as the township is to the individual police officers. Thus, although in this case the township eventually paid the judgment rendered against it after the garnishment of its bank account, in the future, under the jurisdictional rule the township proposes, such a garnishment would not be possible in the absence of a separate basis of federal subject matter jurisdiction over the garnishee bank. Even the fact that the garnishee may not dispute the debt would not be dispositive, for the summary remedy specified in section 2A:17-59 and the liquidation remedies specified in section 2A:17-61 would be equally subject to the township's proposed requirement of a separate basis of federal subject matter jurisdiction over the garnishee. Since such a separate basis of subject matter jurisdiction will rarely exist, the effect of the township's position would be that in almost all cases federal courts would be unable to enforce their judgments by resort to garnishment process.
 
 
 68
 The untoward consequences of insistence upon a federal district court possessing an independent basis of subject matter jurisdiction over a garnishee would not be confined to efforts at post-judgment enforcement. Under Rule 64 of the Federal Rules of Civil Procedure, prejudgment in rem and quasi in rem remedies are available "under the circumstances and in the manner provided by the law of the state in which the district court is held[.]" Fed.R.Civ.P. 64. The township's proposed approach would mean that such remedies would be available only in one instance--a case in which there is complete diversity between the plaintiff and both the defendant and the garnishee. Garnishment or any similar provisional prejudgment remedy could never be available in a federal question case, for there would be no federal question claim against the party subject to the prejudgment seizure. In fact, such a claim would only exist against the defendant. Yet Rule 64 provides explicitly for prejudgment garnishment and obviously contemplates its availability in diversity cases as well as in federal question cases. The township's proposed rule would make this remedy unavailable in the latter class of cases. No interests of the United States, or of the states in the federal union suggest such a patently unsound ancillary jurisdiction rule. The township's reference to interests of comity is totally unpersuasive in the absence of some reference to an interest of the State of New Jersey which would be offended by permitting a federal court to take the steps required to enforce its judgments. A rule requiring that there be a separate state lawsuit to enforce a federal court judgment by garnishment process would actually impair any identifiable interest of that state. It would impose on the state courts the role of serving as an auxiliary or adjunct to the district court by cleaning up the loose ends of a district court lawsuit.[4]
 
 
 69
 The township also contends that, because it disputes its liability under the collective bargaining agreement, there is no method under New Jersey law to enforce against it the judgment against the police officers. In making that assertion it relies on National Cash Register Co. v. 6016 Bergenline Ave. Corp., 140 N.J.Super. 454, 457, 356 A.2d 447, 449 (App.Div.1976) (per curiam). That case, however, concerns the summary turnover procedure authorized by N.J.Stat.Ann. Sec. 2A:17-63 (West 1952). It does not address the question whether a claim against a debtor of the judgment debtor can be reached by virtue of the liquidation provision in N.J.Stat.Ann. Sec. 2A:17-62 (West 1952).
 
 
 70
 We hold, therefore, that the district court has ancillary jurisdiction to adjudicate a garnishment action by a judgment creditor against a nonparty to the original lawsuit which may owe the judgment debtor an obligation to indemnify against the judgment, or any other form of property.[5]
 
 B.
 
 71
 Entirely apart from the court's authority under Rule 69 and New Jersey law, there is in this case a separate basis for ancillary jurisdiction over the dispute with respect to the township's obligation to indemnify the police officers. Had the carrier in the pre-judgment stage asserted on behalf of the township that it would not honor the contractual indemnity agreement in the collective bargaining agreement, it would have been appropriate for the police officers to file a cross-claim against the township for contract indemnification pursuant to Rule 13(g). See, e.g., Thomas v. Malco Refineries, Inc., 214 F.2d 884, 886 (10th Cir.1954); President & Directors of Georgetown College v. Madden, 505 F.Supp. 557, 593-95 (D.Md.1980), aff'd in part and dismissed in part, 660 F.2d 91 (4th Cir.1981); Coyne v. Marquette Cement Manufacturing Co., 254 F.Supp. 380, 388 (W.D.Pa.1966); 6 C. Wright and A. Miller, Federal Practice and Procedure Sec. 1431, at 169 (1971). There is no time limit on the filing of such a cross-claim, and a district court may separate its adjudication from the main trial. See Fed.R.Civ.P. 42(b).[6]
 
 
 72
 When the police officers joined in the plaintiff's motion, they in effect made a Rule 13(g) cross-claim against the township even though they did not formally so designate their claim. The fact that the officers filed their cross-claim after the adjudication of the main claim does not in these circumstances eliminate the district court's ancillary jurisdiction to consider it. Blackburn Truck Lines, Inc. v. Francis, 723 F.2d 730, 732 (9th Cir.1984).[7] Nor does the existence of the additional procedural requirements for the post-judgment amendment of pleadings preclude the exercise of such jurisdiction, for those procedural difficulties do not bear upon the district court's subject matter jurisdiction and thus lend no support to the township's deficient analysis of the scope of ancillary jurisdiction.[8]
 
 
 73
 Defects, if any, in the proceedings resulting in the order appealed from were at most procedural, not jurisdictional. Whether one approaches the matter as a Rule 69(a) proceeding or as a Rule 13(g) proceeding, the township was entitled to a procedure appropriate to the nature of the dispute, which was limited to the issue of the legality under New Jersey law of the township's indemnity undertaking. The township tendered no disputed issues of material fact, and it never urged that it required a more adequate opportunity to marshall its legal arguments, even after the district court pointed out that it had filed no responsive papers. Indeed the township's legal position was presented to the district court in substantially the same manner as it is presented on appeal.[9] Thus any procedural irregularities resulting from the summary manner in which the district court resolved the dispute over the township's indemnification undertaking must be regarded as harmless. "[A]t every stage of the proceeding [we] must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Fed.R.Civ.P. 61.
 
 III.
 
 74
 Our holding that the district court had ancillary jurisdiction requires that we address the merits of the township's objection to the district court's disposition of the dispute over the indemnification agreement. The sole substantive defense that the township offered in the district court was that the collective bargaining agreement, if construed to mean what it unequivocally says, would be illegal under New Jersey law. That position is without merit.
 
 
 75
 The New Jersey courts have expressly held enforceable a municipality's obligation, contained in a collective bargaining agreement, to indemnify city officers for compensatory damage awards arising out of unlawful acts. See City Council v. Fumero, 143 N.J.Super. 275, 362 A.2d 1279 (Law Div.1976). At issue in Fumero was a municipality's obligation under a collective bargaining agreement--indistinguishable for purposes of this appeal from the one between the Township of Edison and its police officers--to defend and indemnify municipal officers who were defendants in a section 1983 suit. The municipality had sought a declaratory judgment against its insurance carrier and the defendant officers after the carrier had refused to defend the officers. With respect to the enforceability of the collective bargaining agreement's indemnification provision, the New Jersey court wrote:
 
 
 76
 The collective bargaining agreement also addressed itself to the issue of indemnification for judgments which might be recovered against members of the bargaining unit. Counsel have not referred to any statutory provision which addresses itself to this issue. In the absence of a controlling statute, the terms of the contract control the rights of the respective parties. The agreement presently before the court requires the municipality to indemnify the individual officers for a judgment of compensatory damages. No right of indemnity exists if a judgment for punitive damages is returned. Such a contractual provision is in accord with public policy.
 
 
 77
 Id. at 284, 362 A.2d at 1283-84 (citations omitted). The court also held that the insurance carrier was obliged under its policy to defend and indemnify the police officers. Id. at 288, 362 A.2d at 1285.[10]
 
 
 78
 Relying on Moya v. City of New Brunswick, 90 N.J. 491, 448 A.2d 999 (1982), and Valerius v. City of Newark, 84 N.J. 591, 423 A.2d 988 (1980), the township contends that the indemnification clause is contrary to New Jersey public policy and is therefore unenforceable. The authorities cited by the township have no bearing upon this appeal. They deal with the entirely distinct matter of the statutory obligation to defend and indemnify imposed upon municipalities and other government agencies by the New Jersey Tort Claims Act. See Moya, 90 N.J. at 495, 448 A.2d at 1001; Valerius, 84 N.J. at 593, 423 A.2d at 989. The statutory liability at issue in Moya and Valerius has nothing to do with the legality of a contract indemnification undertaking.
 
 
 79
 Fumero is dispositive of the issue of the enforceability of the indemnification clause at issue in this case. Thus we reject the township's contention that the district court erred as a matter of law in holding that the indemnification clause required the township to satisfy the judgments rendered against the individual police officers.
 
 IV.
 
 80
 The district court had ancillary jurisdiction to proceed against the township by garnishment proceedings to enforce the township's contract indemnification undertaking. Both Rule 69(a) and Rule 13(g) provide procedural mechanisms for the exercise of that ancillary jurisdiction. The district court's holding that the township owed a duty to indemnify the officers and that the judgment creditors of the defendant police officers could reach the township and enforce that duty is consistent with New Jersey law. The order appealed from will therefore be affirmed.
 
 
 81
 BECKER, Circuit Judge, concurring.
 
 
 82
 I agree that the district court had ancillary jurisdiction over the police officers' claim against the township. I also agree that New Jersey law provides a procedural mechanism by which the district court, under rule 69, could adjudicate the indemnification claim. Accordingly, because I join in the majority's discussion of the merits (Part III), I vote to affirm the judgment of the district court. I write separately, however, because I believe that Judge Gibbons' discussion of ancillary jurisdiction, while conceptually sound in many particulars, cuts too broadly.
 
 
 83
 Although Judge Gibbons divides his jurisdictional discussion into a garnishment analysis under Rule 69 and a cross-claim analysis under Rule 13(g), I do not believe that the procedural rule alters the basis of ancillary jurisdiction. The issue of jurisdiction is separate from the issue--properly decided by the majority--of whether the rules provide a procedural mechanism by which the court could decide the indemnification issue. See Finkle v. Gulf & Western Mfg. Co., 744 F.2d 1015, 1018 (3d Cir.1984) ("Although the claims presented in this case were authorized by the Federal Rules of Civil Procedure, we must still decide whether there is federal subject matter jurisdiction over them.") Although the police officers' claim must satisfy both the requirements of jurisdiction and of the procedural rules, the Federal Rules of Civil Procedures may neither extend nor contract federal jurisdiction. Fed.R.Civ.P. 82.
 
 
 84
 As discussed more fully infra, a proper analysis of jurisdiction in this case should flow from the conventional criteria for ancillary jurisdiction not from broad analogies to garnishment or to cross-claims. Because specific applications of ancillary jurisdiction may themselves implicate the limits of federal power, broad analogies, such as those employed by the majority, are problematic. Compare Finkle, 744 F.2d 1015 (allowing exercise of ancillary jurisdiction over plaintiff's Rule 13(a) counterclaim against a non-diverse, impleaded third party) with Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) (rejecting exercise of ancillary jurisdiction over plaintiff's Rule 14(a) claim against a non-diverse, impleaded third party).
 
 I.
 
 85
 Judge Gibbons' opinion appears to assume the broad proposition that a federal court has ancillary jurisdiction over any effort to enforce its judgments regardless of whether the adjudication of the defendant's claim for funds involves facts and defendants unrelated to the original dispute. Judge Gibbons analogizes such enforcement actions to garnishment. But garnishment proceedings, as the New Jersey example demonstrates, see N.J.Stat.Ann. Sec. 2A:17-63, generally cannot encompass disputed or unliquidated claims, see 6 Am.Jur.2d Attachment & Garnishment Secs. 126-27 (1963 & Supp.1986), so they do not involve truly separate litigations. The mere fact that federal courts normally have ancillary jurisdiction over garnishment proceedings does not demonstrate that they also have jurisdiction over disputed enforcement actions against third parties not present in the original action.
 
 
 86
 Many enforcement actions are not truly ancillary. That the original parties pursue an action to provide the defendant with funds for satisfaction of the original judgment does not itself provide a sufficient nexus to the original dispute. In a converse situation, federal courts have faced the question whether a state court enforcement action is sufficiently separate from the original litigation that it may be removed to federal court if it presents a proper basis for federal jurisdiction. See 1A J. Moore, B. Ringle & J. Wicker, Moore's Federal Practice p 0.167[12.--3], at 526 (2d ed. 1986) (citing cases). Just as a state enforcement claim may be sufficiently separate from the principal litigation to justify removal upon independent jurisdictional grounds, a federal enforcement claim may be sufficiently separate to prevent a federal court from exercising jurisdiction in the absence of independent jurisdictional grounds.
 
 
 87
 I can easily imagine a situation where ancillary jurisdiction would be in serious doubt--for example, the post-judgment pursuit of a questionable gambling debt allegedly due the defendant from a non-diverse party who was not involved in the principal litigation. This hypothetical action would require the resolution of both factual questions, such as the existence of the contract giving rise to the indebtedness and the potential interposition of an affirmative defense concerning capacity to contract, and legal issues of significant state concern, such as the public policy concerning collection of gambling debts. Under general principles of ancillary jurisdiction, discussed infra, such a claim would probably not be ancillary but would be a separate claim triable only in state court. Ambromovage v. United Mine Workers of America, 726 F.2d 972, 989-91 (3d Cir.1984). Neither do I believe that all claims for indemnification necessarily support ancillary jurisdiction, as the majority explicitly holds. Indemnification claims also may involve complex facts, questions of important state policy, and third parties absent from the principal litigation.
 
 II.
 
 88
 Rather than sanctioning a potentially expansive, fixed rule of ancillary jurisdiction designed to foster implementation of Rule 69, I believe that we should apply conventional principles of ancillary jurisdiction to the particular facts of this case. The primary justification for ancillary jurisdiction is "the judicial reality that [some] multiple claims are most efficiently disposed of in a single proceeding." Ambromovage, 726 F.2d at 989. Accordingly, the first criterion for ancillary jurisdiction is always whether the ancillary and principal claims hinge on a "common nucleus of operative fact." Id., citing United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); see also American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, Sec. 1313(a), at 28, & commentary, at 208-12 (1969). A court should also inquire whether exercise of jurisdiction would violate a federal policy and whether a balance of prudential factors, such as "convenience, judicial economy ... fairness to litigants and ... interests of federalism," calls for a federal forum. Ambromovage, 726 F.2d at 990 & n. 53.
 
 
 89
 In this case, these prudential factors justify the district court's exercise of jurisdiction. The Rule 69 proceeding required an analysis of the same factual events at issue in the principal litigation. Even the ultimate determination of whether the policemen were acting in the scope of their duties and were covered by the collective bargaining agreement related to the question in the original litigation of whether the officers were acting under color of state law. Moreover, no federal policy counsels against jurisdiction of the indemnification claim. In sum, many of the same factors that would justify jurisdiction of the indemnification claim if it had been timely asserted as a cross-claim under Rule 13(g) continue to justify jurisdiction over the Rule 69 claim.
 
 
 90
 The mere fact that jurisdiction would have been proper if the claim were made earlier, however, does not make it proper here. In many situations, the balance of convenience, judicial economy and fairness that generally justifies ancillary jurisdiction might not justify a claim brought after the initial litigation is over.[1] For example, a fact-specific, disputed claim against a new, unrelated third party asserted after the end of the principal litigation will rarely save judicial resources by being attached to the original litigation because the new party is entitled to relitigate any questions of fact relevant to its liability.
 
 
 91
 The facts of this case, however, justify jurisdiction despite the late assertion of the indemnification claim. First, interests of convenience and judicial economy are satisfied. The Rule 69 action involves no parties absent in the initial action who are entitled to relitigate factual contentions already resolved in the principal action. To the extent that the new claim involves any factual questions, they are virtually the same as those already contested, and the new claim brought no demand for a jury trial or other significant procedural burden. Thus, the district judge could consider the evidence adduced in the initial proceedings and speed resolution of the indemnification dispute.
 
 
 92
 Second, interests of fairness counsel strongly in favor of jurisdiction. The record makes plain why the policemen did not assert their cross-claims against the township in the original litigation: the Township's insurance carrier controlled the lawsuit, and selected and paid counsel for both the Township and the police officers. When the insurance carrier assumed the defense of the policemen, it created the impression that the indemnification clause of the collective bargaining agreement applied. Yet, neither the Township nor its insurance company gave any indication before or during trial that either would disregard the obligation under the collective bargaining agreement to pay a judgment against the police officers. As Judge Barry commented at the hearing to show cause, "There was never any doubt in anyone's mind in this courtroom, that the Township was going to pick up the freight, and in fact I was advised so in a number of conversations." Joint Appendix at 99; EE ALSO JOINT APPENDIX AT 103 (QUOTED IN THE MAJORITY OPINION AT ----.) UNDER THESE CIRCUMSTANCES, FAIRNESS ALSO MILITATES IN FAVOR OF JURISDICTION.
 
 III.
 
 93
 Under the facts, adjudication of the enforcement phase of this case involved a common nucleus of operative fact with the underlying claim, impinged on no federal policy, and advanced convenience, judicial economy and fairness. I therefore believe that the district court properly exercised ancillary jurisdiction over the indemnification claim pursuant to the Rule 69 judgment execution procedure; hence I concur in the judgment of the court.
 
 
 94
 STAPLETON, Circuit Judge, dissenting, with whom Judges SEITZ and MANSMANN join.
 
 
 95
 I agree with the majority that a United States district court has ancillary jurisdiction to execute on its judgments.[1] I further agree that Federal Rule of Civil Procedure 69 governs how that ancillary jurisdiction is to be exercised, namely "in accordance with the practice and procedure of the state in which the district court is held." The "practice and procedure" in New Jersey, however, does not authorize what transpired in this case. Nor does Rule 13(g). Accordingly, I respectfully dissent.
 
 A.
 
 96
 New Jersey courts are authorized by statute to execute on judgments. The judgment debtor's real estate, chattels, rights, and credits may be seized and sold to satisfy the judgment. More relevant for present purposes, an obligation of a third party to the judgment debtor may be garnished. When this occurs, however, the court has jurisdiction to order the garnishee to pay the judgment creditor only "if the garnishee admits the debt."[2] The New Jersey "practice and procedure" on this point is tersely summarized by Professor Jennings in his New Jersey practice guide as follows:
 
 
 97
 The garnishee must admit the debt, or the Court has no jurisdiction to order him to pay it over. Beninati v. Hinchliffe, 1256 NJL 587, 20 A.2d 64 (E & A 1941).[3] If the garnishee denies the debt, the proper practice is for the sheriff or a receiver to sue the garnishee. N. Drake, Inc. v. Donovan, 8 [N.J.] Misc. 869, 152 A 337 (Sup Ct 1930); Barrett Co. v. United Bldg. & Constr. Co., 5 [N.J.] Misc. 87, 135 A 477 (Sup Ct 1926)[4]; Sebring v. Patt, 91 NJL 393, 103 A 999 (Sup Ct 1918).
 
 
 98
 E.J. Jennings, Practice-Law Division, published as Volume 3A, Seltzer, New Jersey Law With Forms, Sec. 14.02 at 14-502 (1982) (footnote added); see also 4 M.B. Blackner and D.W. Hansen, New Jersey Practice, Sec. 1930 (1980).
 
 
 99
 Thus, where, as here, the third party who allegedly owes the judgment debtor denies the debt, New Jersey "practice and procedure" calls for the institution of an independent action by appropriate pre-judgment process. This is apparent on the face of N.J.Stat.Ann. Secs. 2A:27-61 and -62, the statutes relied upon by the majority. Unlike the garnishment statute, Sec. 2A:17-63, these statutes authorize the initiation of litigation, not post-judgment process in aid of execution. The majority chooses to gloss over this distinction presumably because it wishes to facilitate the collection of federal judgments in New Jersey. While this objective may be a desirable one, I believe the United States District Court for the District of New Jersey should be able to point to some specific authority before it asserts the right to resolve a state law claim against a third party[5] who could not be forced to litigate in a federal court but for the fortuity that his creditor has suffered a federal judgment.
 
 
 100
 The distinction between post-judgment process in aid of execution and pre-judgment process initiating independent litigation was recognized in Berry v. McLemore, 795 F.2d 452 (5th Cir.1986), a case virtually on all fours with the one now before us. McLemore, the Chief of Police of Maben, Mississippi, was found liable in a civil rights action for having violated Berry's constitutional rights in the course of an arrest. When McLemore failed to pay the judgment, Berry filed a "suggestion of garnishment" in the district court seeking to collect his judgment from the town. Berry alleged that the town was liable to McLemore because it had promised to pay any judgment obtained by Berry and asserted that the district court had ancillary jurisdiction to adjudicate this claim of McLemore's against the town. The Court of Appeals for the Fifth Circuit rejected Berry's argument:
 
 
 101
 Berry [asserts] that this court has ancillary jurisdiction over the present action as necessary to enforce the judgment rendered in [Berry's favor].... This post-judgment jurisdiction, however, is limited to those actions that a court may take in that same action....
 
 
 102
 The writ of garnishment, under the clear precedent of this court, is an action separate and independent from the action giving rise to the judgment debt. Butler [v. Polk], 592 F.2d 1293 [5th Cir.1979]. Berry must have known this, as he did not file the suggestion of garnishment as a post-judgment motion to, or writ of execution to the judgment in, Berry I [Berry v. McLemore, 670 F.2d 30 (5th Cir.1982) ], but rather instituted new proceedings. Moreover, the basis of the garnishment proceedings and the basis of the claim against McLemore are different. In Berry I, Berry's claim arose out of an alleged violation of his constitutional rights; in the instant garnishment proceedings, Berry's claims allegedly arise out of contract, that is the alleged oral agreement between the Town and McLemore.... In other words, the alleged obligations of the Town ... are completely independent of the primary judgment against McLemore. We can find no case where a court held that it had ancillary jurisdiction to consider claims in a new and independent action merely because the second action sought to satisfy or give additional meaning to an earlier judgment. In any event, we are bound by our own precedent, and conclude that this court's ancillary jurisdiction to enforce its judgment does not extend to these garnishment actions....
 
 
 103
 Thus, since any jurisdiction that this court had in Berry I is not available to this court in the instant actions, we must find an independent basis for federal jurisdiction over these garnishment actions or else dismiss the suggestions of garnishment.
 
 
 104
 795 F.2d at 455-6.
 
 
 105
 The proposition that an independent suit to collect a federal judgment requires an independent basis of federal jurisdiction also finds support in H.C. Cook Company v. Beecher, 217 U.S. 497, 30 S.Ct. 601, 54 L.Ed. 855 (1910) (Holmes, J.). In Beecher, the plaintiff secured a money judgment against a Connecticut corporation in a patent infringement suit. It thereafter brought suit against the directors of that corporation, asserting that they were answerable for the federal judgment already obtained. The district court rejected the argument that, because of the federal judgment, it had ancillary jurisdiction to entertain the plaintiff's claim. The Supreme Court affirmed and explained that "if the directors are under obligation by Connecticut law to pay a judgment against their corporation, that is not a matter that can be litigated between citizens of the same State in ... [the courts] of the United States." 217 U.S. at 499, 30 S.Ct. at 602.
 
 
 106
 While Justice Holmes' "pronouncement" in Beecher may be "delphic" as the majority suggests and while it is true that Beecher was decided before Rule 69 was adopted, this does not deprive it of precedential value in the current context. In Beecher, as in Berry, the court held that a federal district court does not have ancillary jurisdiction to entertain an independent action to collect a state law debt simply because that independent action is a part of an effort to collect a federal judgment. As in Beecher and Berry, the parties to this suit, in accordance with well-settled New Jersey practice, looked first to an independent action to resolve the issues concerning the collective bargaining agreement claim. It was only at the insistence of the district judge that they applied in this case for a rule to show cause why the Township should not be ordered to pay the judgment. While this application distinguishes Beecher and Berry factually, the distinction is not legally relevant. The plaintiffs cannot, by the simple expedient of filing their application in this proceeding rather than in a new one, create ancillary jurisdiction where none would otherwise exist.
 
 
 107
 I read Rule 69 as incorporating into federal practice only New Jersey's post-judgment execution process. Accordingly, for me, N.J.Stat.Ann. Secs. 2A:17-61 and 62 are irrelevant. However, if Rule 69, as the majority suggests, incorporates these sections and thereby authorizes the marshal or a receiver to initiate a new proceeding against the garnishee in the district court, the holdings of Beecher and Berry are equally pertinent here. A federal district court has no jurisdiction to entertain an independent proceeding on a state claim between non-diverse parties even if it is brought as part of an effort to collect a federal judgment.
 
 B.
 
 108
 In order to understand why Rule 13(g) does not aid the plaintiffs, a more detailed review of the procedural history of the case is required. In October, 1977, there was a barroom fight between several off-duty members of the Township police department and appellees Marcos Skevofilax and Michael Michaels. This ultimately gave rise to a civil rights action which resulted in jury verdicts and substantial judgments in favor of Mr. and Mrs. Skevofilax and Michaels and against the Township and three individual police officers, Quigley, Fekete, and Semenza.
 
 
 109
 After the entry of the judgment against them, the individual police officers brought suit against the Township in the Superior Court of New Jersey, Middlesex County, seeking an order requiring it to pay the judgments entered against them. They relied upon a provision in their collective bargaining agreement with the Township that provided for indemnification by the Township of any liabilities incurred by a police officer "arising out of or incidental to the performance of his duty." The Township denied liability contending, inter alia, that the liability of these police officers had not arisen out of and was not incidental to the performance of their police duties.
 
 
 110
 Approximately a year after the entry of the federal judgments and while the state case remained pending, the federal plaintiffs, on the suggestion of the trial judge, moved in the district court for an order requiring the Township to pay the judgment against the individual police officers. Their argument was predicated on the same clause of the collective bargaining agreement that was the basis for the state case brought by the police officers. The individual police officers joined in this motion and secured a stay of their state action.
 
 
 111
 In response to a rule to show cause why such an order should not be entered, the Township insisted that the district court lacked jurisdiction to adjudicate the police officers' indemnity claim.[6] It also advised the court that it denied liability on this claim not only because the officers' liability did not arise out of the performance of their duty,[7] but also because the indemnification clause, if construed to be applicable, would violate New Jersey law.
 
 
 112
 The district court, one day before cross motions for summary judgment were to have been heard in the state court, decided that it had jurisdiction to resolve the controversy between the police officers and the Township. It then held that the officers were entitled to indemnification under the collective bargaining agreement based in part on a finding "as a matter of law that they [the police officers] were operating under color of state law."[8] Purporting to act under Rule 69 of the Federal Rules of Civil Procedure, the district court ordered the Township to pay the judgments against the police officers.
 
 
 113
 The majority's alternative rationalization for these post-judgment actions of the district court begins with the proposition that a district court exercising its ancillary jurisdiction may adjudicate Rule 13 cross-claims that assert that the claimant is entitled to be indemnified if he or she is found liable to the plaintiff. I agree that this proposition is accurate as applied to cross-claims and third-party claims that are litigated as a part of the original case. See, e.g., Pennsylvania Railroad Co. v. Erie Avenue Warehouse Co., 302 F.2d 843 (3d Cir.1962). I know of no authority, however, that would sanction an exercise of ancillary jurisdiction in the circumstances currently before us.
 
 
 114
 The majority's analysis oversimplifies the issues presented by this case. It suggests that the police officers, when they joined plaintiffs' post-judgment motion, "in effect made a Rule 13(g) cross-claim against the Township." P. 386. Had the police officers sought to pursue this course of action, they would have been required to amend their pleadings pursuant to Rule 15(a)[9] to assert such a cross-claim. Because of the policies favoring certainty in the conclusion of litigation, however, a court may not authorize amendments under Rule 15(a) after a final judgment is entered unless and until that judgment has been vacated. Kelly v. Delaware River Joint Commission, 187 F.2d 93, 94-95 (3d Cir.), cert. denied 342 U.S. 812, 72 S.Ct. 25, 96 L.Ed. 614 (1951); 3 J. Moore, Moore's Federal Practice, Secs. 15.07 and 15.10 (2d Ed. 1985 Supp.); 6 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure Civil, Sec. 1489 at 445 (1971 and 1985 Supp.).[10] Accordingly, the district court could not properly have granted the majority's hypothetical post-judgment motion with the final judgments still in place.
 
 
 115
 It is true that where the requirements of Rules 59(a) or 60(b) are met, a judgment may be opened and an amendment permitted. See Kelly; C. Wright, A. Miller, & M. Kane, supra, at Sec. 1489.[11] However, neither provision of the Rules is applicable here. A Rule 59(a) motion must be filed within ten days of the entry of judgment and is inapplicable for that reason alone. Of the six grounds for relief from judgment specified in Rule 60(b), only the catchall sixth ground is even arguably applicable to this case and its very wording demonstrates that Rule 60(b) does not address situations like this one. To obtain relief under Rule 60(b)(6), one must show a compelling reason "justifying relief from the operation of the judgment." Here no one attacks the outstanding final judgments. They are valid and no one claims to be entitled to relief from their operation.
 
 
 116
 Moreover, even if Rule 60(b)(6) were applicable, relief is unavailable under that section absent a showing that extraordinary circumstances justify the reopening of the judgment and that the movant's delay in seeking an amendment is not unreasonable. Federal Deposit Insurance Corp. v. Alker, 234 F.2d 113 (3d Cir.1956); see McDonald v. Oliver, 642 F.2d 169 (5th Cir.1981); Fed.R.Civ.P. 60; C. Wright, A. Miller, & M. Kane, supra, Sec. 1489 at 446-47.
 
 
 117
 The police officers made no showing of extraordinary circumstances. Nor could they have made such a showing. The officers voluntarily elected not to assert a known claim during five years of litigation, made the Township litigate that claim in New Jersey's courts for a substantial period, and did not even ask the district court to consider it until almost a year after final judgment had been rendered. While this is an extraordinary situation in the sense that it is unprecedented, it is clear that the police officers could have shown neither diligence nor extraordinary equities favoring their position.
 
 
 118
 It follows that the district court's order directing the Township to pay the judgment against the individual police officers could not stand even if it had been premised on some independent basis of subject matter jurisdiction. Because there is no such independent jurisdictional basis here, however, there is another important consideration that the majority fails to take into account. "[P]ractical needs are the basis of the doctrine of ancillary jurisdiction." Owen Equipment, 437 U.S. at 377, 98 S.Ct. at 2404. Where "considerations of judicial economy, convenience, and fairness to litigants ... are not present a federal court should hesitate to exercise jurisdiction over state claims.... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (footnote omitted). Where, as here, the primary litigation allegedly giving rise to the ancillary jurisdiction has been concluded before the ancillary claim is even raised, and proper resolution of the ancillary claims will require significant further proceedings in federal court, practical concerns will rarely suffice to override this interest in comity. See id. at 726-27, 86 S.Ct. at 1139-40.[12]
 
 
 119
 At the time the federal plaintiffs and the police officers first asserted their contract indemnity claim, the considerations of efficiency and conservation of judicial resources that would have justified an exercise of ancillary jurisdiction had that claim been timely raised were no longer applicable. Neither the plaintiffs nor the police officers have shown that there was any appropriate saving of judicial resources when the district court diverted the contract indemnity claim from the state courts.
 
 
 120
 While it is true that the district court resolved the newly-raised indemnity claim without extensive additional proceedings, the issues presented therein were not susceptible of such summary resolution. The issue of whether the officers' conduct came within the scope of the indemnity provision of the collective bargaining agreement could not appropriately be resolved by a finding that the officers were "acting under color of state law." I agree with the district judge and the plaintiffs that the original jury's verdicts necessarily determined that the individual police officers were acting "under color of state law." However, whether one so acts for the purposes of Section 1983 is determined by reference to whether one purports to act under the authority conferred by state law. See, e.g., Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961), overruled on other grounds, Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). That issue is therefore determined without regard to whether the civil rights defendant was performing acts which he and the State contemplated would be performed as part of his employment. See Monroe, 365 U.S. at 184, 81 S.Ct. at 482; Screws v. United States, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945); Lopez v. Vanderwater, 620 F.2d 1229 (7th Cir.), cert. dismissed 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980). While I express no opinion with respect to the proper construction of the indemnity provision under New Jersey law, there is no reason to conclude that that provision was intended to be coterminous with Section 1983's requirement of state action.
 
 
 121
 The majority relies on equitable considerations and on presumed facts not in the record concerning the parties' insurance coverage and the conduct of the insurer in arguing that the district court should be permitted to see that its judgment is fully satisfied. However, we have no authority to disregard the interest in comity inherent in our federal system and laws of jurisdiction, or to ignore the need for finality in judgments reflected in the federal rules discussed above, simply to reach what may be a preferred result.
 
 
 
 *
 Hon. Arlin M. Adams, United States Circuit Judge, was present at oral argument but did not participate in the decision
 
 
 [1]
 In the underlying proceeding the plaintiffs alleged that the defendant officers and the township had violated their constitutional rights and sought damages under 42 U.S.C. Sec. 1983 (1982). The district court thus had subject matter jurisdiction. See 28 U.S.C. Sec. 1331 (1982). The plaintiffs also pleaded pendent state law claims against the township for negligence and against the police officers for malicious prosecution. A seven-week trial produced a judgment in favor of appellee Skevofilax against the township for $74,964.14 for its negligence and against the police officers individually for $296,700.19 for their violation of his constitutional rights and $55,236.75 for malicious prosecution. Appellee Michaels obtained a judgment against the police officers individually for $11,000 for their violation of his constitutional rights and $1,000 for malicious prosecution. The district court, acting pursuant to 42 U.S.C. Sec. 1988 (1982), also awarded a judgment for attorneys fees against the police officers individually in the sum of $199,521.00. No punitive damages were awarded and the question of punitive damages was not an issue in this appeal
 
 
 [2]
 After the notice of appeal was filed the insurance carrier acknowledged its obligation to pay the $74,964.14 negligence judgment against the township. The township then paid that amount, but did so only after the district court entered an order directing the First National State Bank of Edison to turn over to the United States Marshal funds in the township's bank account
 
 
 [3]
 In a document captioned "Certification of Peter DeSarno," filed in this court in support of an application for a stay of execution without a supersedeas bond, the township noted the contract indemnity provision and stated:
 As previously indicated the three officers in question were off duty, out of uniform, in a bar and were engaged in a fight which resulted in all three being disciplined by the Township, one convicted of assault and battery. It is the Township's position that the judgment entered against these individuals is not covered by the above referenced contract provision.
 Joint Appendix at 45. This "certification" was never presented to the district court and, as indicated in the text above, the township never argued at trial that the indemnity clause did not cover the activities in question. We were advised at oral argument that the defendant police officers have obtained summary judgment in their action pending in New Jersey court to enforce the collective bargaining agreement's indemnity clause.
 
 
 [4]
 The township finds support for its proposed limitation of the district court's judgment enforcement powers in H.C. Cook Company v. Beecher, 217 U.S. 497, 30 S.Ct. 601, 54 L.Ed. 855 (1910). That opinion, by Justice Holmes, is a typically delphic pronouncement. It states the result, but not the reasons for that result. Justice Holmes probably intended the opinion to be an interpretation of the then-governing statute, the Conformity Act of 1872, ch. 255, 17 Stat. 196. If it was so intended, Beecher is wholly irrelevant to the issue of ancillary jurisdiction exercised pursuant to Rule 69, a rule that was not drafted until after enactment in 1934 of the Rules Enabling Act, Pub.L. No. 416, 48 Stat. 1064 (codified at 28 U.S.C. Sec. 2072 (1982)). If, on the other hand, Justice Holmes intended his opinion to serve as a pronouncement on the constitutional limits of ancillary jurisdiction, he certainly kept that intention to himself, for it is nowhere mentioned in the opinion. Thus, beyond its superficial factual similarity, Beecher bears no resemblance to this case before us and lends no support to the township's jurisdictional position
 
 
 [5]
 Judges Weis, Higginbotham, Sloviter, and Aldisert join in this holding
 
 
 [6]
 Furthermore, the township could have moved pursuant to Rule 14(a) to join the carrier as a third party. See, e.g., Government Employees Ins. Co. v. United States, 400 F.2d 172, 174 (10th Cir.1968); Southern Farm Bureau Casualty Ins. Co. v. United States, 395 F.2d 176, 179-80 (8th Cir.1968); Impex Agricultural Commodities Div. Impex Overseas Corp. v. Parness Trucking Corp., 576 F.Supp. 587, 591 n. 2 (D.N.J.1983). Impleading would have been proper even if the carrier had been conducting the defense, so long as the carrier contested its indemnification liability. Rosalis v. Universal Distributors, Inc., 21 F.R.D. 169, 172 (D.Conn.1957); 6 C. Wright and A. Miller, Federal Practice and Procedure Sec. 1449, at 267 (1971)
 
 
 [7]
 The conclusion that the district court had ancillary subject matter jurisdiction over this cross-claim draws additional support from Barrow v. Hunton, 9 Otto 80, 99 U.S. 80, 25 L.Ed. 407 (1878), in which the Supreme Court held that a judgment debtor's attack on a judgment rendered by a state court could not be removed to federal court because such an attack was ancillary to the original state proceeding. See id. at 83-85. Neither a state court nor a federal court must depend upon the other for the enforcement of a judgment
 
 
 [8]
 Because Judges Sloviter and Higginbotham are satisfied that the federal jurisdiction that supported the original claim supports federal jurisdiction to enforce the judgment, they believe it is unnecessary to reach the question whether the ancillary jurisdiction over a Rule 13(g) cross-claim extends to a cross-claim raised after judgment is entered. Therefore, they do not join in Part II.B. of the opinion
 
 
 [9]
 Arguably, under N.J.Stat.Ann. Sec. 2A:17-61 (West 1952), the United States Marshal should have been named a nominal party to the garnishment proceeding. The Township does not contend, however, that the absence of such a nominal party resulted in prejudice. See Fed.R.Civ.P. 17(a)
 
 
 [10]
 That Fumero is undoubtedly still a correct statement of New Jersey law with respect to contract indemnification is evidenced by the recent New Jersey Supreme Court decision in Moya v. City of New Brunswick, 90 N.J. 491, 448 A.2d 999 (1982), in which that court made clear that a collective bargaining agreement may afford the type indemnification that the township contests here. See id. at 505 n. 8, 448 A.2d at 1006 n. 8
 
 
 [1]
 Judge Gibbons asserts that because there is no time bar on the filing of a cross-claim, jurisdiction is proper in this case. But this argument confuses the requirements of our rules of procedure with the separate requirements of jurisdiction. Furthermore, although there is no fixed time bar to cross-claims, courts still weigh prudential considerations in deciding whether to accept late cross-claims. See 6 C. Wright and A. Miller, Federal Practice and Procedure Sec. 1431, at 169 (1971). Even if I were to apply Judge Gibbons' analogy to time restrictions on Rule 13(g), and even assuming that cross-claims may be made after settlement of the principal claim, I would still weigh interests of convenience and fairness in deciding whether to permit this constructive cross-claim. However, because I find that Rule 69 provides the procedural mechanism to implement ancillary jurisdiction, I need not consider the alternate procedural mechanism of Rule 13(g)
 
 
 [1]
 As the Supreme Court declared in 1868,
 Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was confered by the Constitution. Riggs v. Johnson County, 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1868).
 
 
 [2]
 N.J.Stat.Ann. Sec. 2A:17-63 provides:
 After a levy upon a debt due or accruing to the judgment debtor from a third person, herein called the garnishee, the court may upon notice to the garnishee and the judgment debtor, and if the garnishee admits the debt, direct the debt, to an amount not exceeding the sum sufficient to satisfy the execution, to be paid to the officer holding the execution or to the receiver appointed by the court, either in 1 payment or in installments as the court may deem just. (Emphasis supplied.)
 
 
 [3]
 The Court of Errors and Appeals put it this way in the Beninati case:
 Where there is a levy on rights and credits under the statute here involved, R.S. 2:32-178, N.J.S.A. 2:32-178, a section of the district court act, or under the executions act, R.S. 2:26-179 and 180, N.J.S.A. 2:26-179, 2:26-180, and a rule is issued against the garnishee and the judgment debtor, an order directing the garnishee to pay the money over may be made only when the garnishee admits the debt is due the judgment debtor. "Upon the return of the rule to show cause, an order may be made requiring the garnishee to pay said debt, 'if he admits it.' " First Mechanics', etc., Bank v. New Jersey Brick & Supply Co., 112 N.J.L. 218, 171 A. 176, 177 [Sup.Ct.1934]. "The words 'an order may be made requiring the garnishee to pay said debt, if he admits it, to the officer,' make the admitting of the debt a jurisdictional sine qua non." N. Drake, Inc. v. Donovan, 152 A. 337, 339, 8 N.J.Misc. 869; Barrett Co. v. United Building Construction Co., 135 A. 477, 5 N.J.Misc. 87.
 
 
 [20]
 A.2d at 66
 
 
 [4]
 In the Barrett Co. case, relied upon by the majority, the Supreme Court of New Jersey refused to approve an order directing the garnishee to pay the judgment creditor where the garnishee did not admit the debt. It explained the relevant New Jersey practice as follows:
 [T]he rights and credits levied on (in this case the claim to a retained percentage) must be liquidated to use the language of the statute, by a suit, either in the name of the sheriff or of a receiver. This was the course pursued in Sebring v. Pratt, 92 N.J.Law, 393, 103 A. 999, and seems to be the only way of judicially settling the question whether the borough is liable to those claiming under the contractor, and, if so, to what extent.
 
 
 [135]
 A. at 478
 
 
 [5]
 While the Township was a party to the original litigation, I view it as a third party with respect to the claim based upon the collective bargaining agreement, which was not asserted in that litigation. In any event, the rationale of the majority would apply to claims of the judgment debtor against parties who had nothing to do with the original litigation whether or not those claims were related in any way to the subject matter of the original litigation
 
 
 [6]
 The Labor Management Relations Act, 29 U.S.C. Sec. 141, et seq. and, of course, Sec. 301 thereof, 29 U.S.C. Sec. 185, does not provide an independent basis for federal subject matter jurisdiction. Even though a collective bargaining right is involved, the Act does not apply to political subdivisions such as the Township
 
 
 [7]
 The Township asserts that the police officers' liability "arose not from the performance of a police officer's duty, but from the malicious excesses of a brawl."
 
 
 [8]
 The majority opinion asserts that there were no "issues of material fact concerning the construction of the indemnification clause," P. 380, and that the district judge correctly understood the Township only to be making two legal arguments, one addressed to the court's jurisdiction and the other addressed to the public policy of New Jersey. This view of the record fails to explain the fact that there would have been no reason for the district court to have ruled at the post-judgment hearing that Quigley, Fekete, and Semenza "were operating under color of state law" unless she understood the Township and its insurer to be arguing that the conduct of their officers did not come within the terms of the collective bargaining agreement. There was no other pending issue that the district judge could have thought she was resolving by making that finding. While I believe her legal analysis was faulty when she concluded that no material issues of fact remained to be litigated, see infra, p. 396, clearly she understood that the Township had three arguments, not two
 
 
 [9]
 Rule 15(a) states in relevant part:
 ... [A] party may amend his pleadings only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires....
 
 
 [10]
 In contrast to Rule 15(a), Rule 15(b) expressly authorizes post-judgment amendments when necessary to conform the pleadings to the issues "tried by express or implied consent of the parties." Rule 15(b) is inapplicable here because the police officers' right to be indemnified was not tried in the original proceedings. The district judge, shortly before entering the final judgments, observed in an opinion:
 [W]hether the Township may have contractual obligations to other defendants are issues between the Township and those defendants that this court has not been called upon to decide.
 
 
 [11]
 Rule 59(a) and (b) provide:
 (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.
 (b) Time for Motion. A motion for a new trial shall be served not later than 10 days after the entry of the judgment.
 Rule 60(b) provides in part:
 (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation....
 
 
 [12]
 This case closely resembles a number of others in which Courts of Appeal have found inappropriate an exercise of ancillary jurisdiction after the original litigation has been terminated. See, e.g., Joiner v. Diamond M. Drilling Co., 677 F.2d 1035, 1043 (5th Cir.1982) (claim against third-party defendant for contribution brought before settlement of primary claim dismissed after settlement); McDonald v. Oliver, 642 F.2d 169, 172 (5th Cir.1981) (motion to apportion liability made after judgment); Rosario v. American-Export Isbrandtsen Lines, Inc., 531 F.2d 1227, 1233 n. 17 (3d Cir.) (dictum, claim against third-party defendant where main claim settled before trial), cert. denied sub nom. Rosario v. United States, 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976). This case is unlike Blackburn Truck Lines, Inc. v. Francis, 723 F.2d 730 (9th Cir.1984), because in Blackburn the court found that there was an independent basis for federal jurisdiction under the Interstate Commerce Act and 28 U.S.C. Sec. 1337