GARY KADZIELAWSKI *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF SKOKIE, Defendants-Appellees and Cross-Appellants.

First District (4th Division)    No. 1—88—2939

Opinion filed February 15, 1990.

Joel A. D'Alba and Asher, Gittler & Greenfield, Ltd., both of Chicago, for appellants.

Di Leonardi & Broihier, Ltd., of Des Plaines (John C. Broihier and Kathryn E. Korn, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiffs, Gary Kadzielawski and Henry Sajovic, were suspended from the fire service of the Village of Skokie and fined $3,500 and $1,500, respectively. On appeal, the circuit court of Cook County upheld the suspensions but reduced the fines to $500 and $200. In the appeal from that decision, plaintiffs claim that they were improperly disciplined for speaking on public issues; other fire fighters similarly situated were not similarly disciplined; and the board had no authority to impose fines.

We affirm.

BACKGROUND

Plaintiffs have been fire fighters with the Village of Skokie fire department (the Department) since August 31, 1981. They were acting lieutenants at the time of the disciplinary proceedings. As part of their duties, they assisted the Department's emergency medical service paramedics. In the early 1980's, in response to a departmental order, plaintiffs had begun taking paramedic training courses at area hospitals. Kadzielawski was dropped from the program at Ingalls Hospital for failing to meet the academic requirements. Sajovic completed training at St. Francis but did not obtain State certification. As a result, neither received a wage increase for one year.

In September 1986 the Department's emergency medical services committee determined that the employees who were not yet State-certified paramedics should be given training at area hospitals and recommended this action to Chief Quillen, who agreed. In February 1987, the chief ordered plaintiffs to report to Christ Hospital and Medical Center in Oak Lawn, Illinois, take an entrance examination, and attend training sessions in order to obtain State certification.

The program at Christ Hospital is administered by Patricia Perlman, R.N., and her assistant, Janet Tracy. On February 17, 1987, plaintiffs sat for the written examination. Kadzielawski wore a T-shirt adorned with the legend: "Compassion Sucks." After they finished the examination, they spoke with Tracy at her desk for a short time. Perlman was present, in the back of the office. The occurrence and conversations that took place on that date became the basis for the

charges filed against plaintiffs.

Perlman recognized Kadzielawski from his previous training class at Ingalls Hospital. She recalled that he had commented then, during an interview with her, that the emergency medical services program would be the "ruination" of the fire department. Kadzielawski had missed some classes and failed an examination. He told Perlman that Skokie Fire Chief Quillen was "stupid" to expect him to attend paramedic school.

Both plaintiffs stated their strong preference not to attend the training program. Kadzielawski acknowledged that there were pay advantages, in both overtime and incentive pay, for him to obtain the certification and indicated that he would obey the Department order.

Tracy, the assistant, told the plaintiffs that she would cancel the class after they told her of vacation and travel scheduling problems. According to her testimony, however, she was only joking with the men. They testified that they declined her offer to cancel the class and thus excuse them from taking it.

At some point while plaintiffs were at the hospital, they and a paramedic who came into the room discussed problems that the Chicago Emergency Medical Service had faced, including problems with equipment, and the purchase of new ambulances for Chicago. Sajovic mentioned a channel 2 investigative study concerning Chicago's emergency medical service. Sajovic admitted during the hearing that Perlman was not in the room when this conversation took place. Tracy testified that she did not recall any discussion of these subjects.

Kadzielawski testified that he felt it was in his interest to pass the class so that he could be promoted to lieutenant within the next two years.

The board found that Kadzielawski had displayed a distinct negative attitude toward emergency medical services by wearing a T-shirt with the "Compassion Sucks" legend; by stating that the emergency medical services were the ruination of fire departments; and by stating that he was reluctantly willing to become a paramedic and would enter the training program only because of the chief's order. The board further found that he was openly critical of the Department and the chief by stating that the chief was stupid to expect him to attend such classes; by stating that he had been disruptive during a previous training program at a different hospital and by implying that he would be a similar problem at Christ Hospital.

With respect to Sajovic, the board found that he had also exhibited a distinct negative attitude toward paramedic services by stating to Perlman that he did not wish to take care of people and that he

joined the Department to become a fire fighter and not a paramedic. Perlman testified that he told her that he had earned two baccalaureate degrees and that his prior inability to complete the training was not because he was not bright but had to do with his disinclination to "do that type of work."

Perlman notified the Department by letter that the two fire fighters had been denied admission to the program at Christ Hospital because of their attitude toward the program. Apparently, Tracy had told the men initially that they received passing scores on the entrance examination. After Tracy recomputed the scores, however, she found that they were a few points short of passing. The test records were not produced during the hearings, leading the board to find that the Department had failed to establish that the men had, in fact, failed to obtain the minimum passing grades. The test results were not the basis for the hospital's decision not to accept the fire fighters into the program, however.

The board concluded that the evidence concerning the behavior and statements of both plaintiffs under the circumstances demonstrated that neither wished to become paramedics or attend the classes at the hospital. In effect, they deliberately thwarted or sabotaged compliance with the chief's order. They failed to become certified as paramedics as required by the Department order, and the board accordingly found that their conduct of February 17 constituted substantial shortcomings that required discipline short of discharge.

The board then imposed suspensions for 10 "duty days" consisting of 24-hour days (equating with 30 eight-hour days), plus fines in the amount of $3,500 against Kadzielawski and $1,500 against Sajovic.

Plaintiffs appealed to the circuit court of Cook County, which affirmed the suspensions but reduced the fines to sums of $500 and $200, respectively.

OPINION

Plaintiffs raise four issues. They challenge the propriety of the board's imposition of discipline for what they characterize as their exercise of free speech concerning matters of public concern. Alternatively, they contend that the decision was against the manifest weight of the evidence. They also argue that the board lacks statutory authority to fine employees. Finally, they assert that they were victims of disparate and unequal treatment because two other fire fighters were not disciplined when they did not take the training program.

# I

In an attempt to cloak their conduct with the protection of the first amendment, plaintiffs cite cases which uphold the rights of public employees to speak freely on matters of public concern, even if some statements appear derogatory to their employer. (See *Schafer v. Board of Fire & Police Commissioners* (1979), 69 Ill. App. 3d 677, 387 N.E.2d 976.) To fit within those cases plaintiffs contend that their comments of February 17, 1987, should be interpreted as related to health and safety matters of concern to the public. They concede that their desire to avoid paramedic duties was "arguably" a personal, rather than public, concern. Plaintiffs nevertheless maintain that their comments also served a public interest in safe and efficient fire fighting services.

■ We find little in the record to support plaintiffs' first amendment argument. In *Connick v. Myers* (1983), 461 U.S. 138, 75 L. Ed. 2d 708, 103 S. Ct. 1684, the United States Supreme Court limited the extent to which an employee may use the first amendment as a shield from job-related discipline. The Court recognized free speech protection extending to matters of legitimate public concern, but noted that when "employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." 461 U.S. at 146, 75 L. Ed. 2d at 719, 103 S. Ct. at 1690. Accord *Norton v. Nicholson* (1989), 187 Ill. App. 3d 1046, 543 N.E.2d 1053.

■ To guide the courts in determining which statements implicate community concerns, the Court in *Connick* stated that the content, form, and context of such statements should be analyzed. In *Connick*, an assistant prosecutor was discharged after expressing reluctance to accept a transfer to a different section and after circulating a questionnaire to her fellow employees that was implicitly critical of her superiors. One of the 14 questions—querying perceived pressure to work on political campaigns—touched upon a matter of public concern. However, the Court concluded that the questionnaire as a whole undermined office relationships and therefore found that the employer's interests outweighed the employee's interest in commenting on the matter touching on public concerns.

In the pending case, plaintiffs cannot deny that their reluctance to take the paramedic training involved personal reasons, including their complaints that the classes would interfere with vacation plans and be inconvenient to attend. Kadzielawski's comments to Perlman that he

was a disruption in the prior training class that he had attended and that the chief was "stupid" to think he would attend classes also indicates an attitude that has nothing to do with matters of public concern. The T-shirt Kadzielawski wore may have been offensive but would not, standing alone, justify discipline. It may be interpreted, however, as reflecting the negative attitude that the board found manifested in his course of conduct and comments while at Christ Hospital on February 17. Comments attributed to Sajovic, that he was intelligent enough to pass the classes but was not inclined to do paramedic work, also indicate a private desire not to have his fire fighting duties be extended to paramedic duties.

■ The mere fact that plaintiffs and another paramedic discussed a television news reporter's story regarding Chicago's fire department does not change the analysis. By plaintiffs' admission, Perlman was out of the room during this conversation and the remarks were directed to the other paramedic, not Tracy. Plaintiffs were taking the entrance examination by order of their chief. They made it clear to the administrator of the hospital's program that they were not happy to be there and that they, personally, did not want to participate in the training program. We find no reason to set aside the board's decision based upon a first amendment challenge.

II

Our review of these facts also leads us to conclude that the decisions of the board and circuit court were not against the manifest weight of the evidence. Plaintiffs urge us to reverse on the grounds that both fire fighters sat for the entrance examination and indicated a willingness to complete the program as being in their best interests.

■ The board considered this evidence along with the other testimony and concluded that plaintiffs had actually sabotaged their chances to be admitted into the hospital's program by their actions. To the person charged with administering the program, Perlman, they had exhibited a strongly negative and critical attitude that could be construed as recalcitrant and counterproductive. Therefore, they could be viewed as complying with the letter of the chief's order in showing up to take the examination, but at the same time ensuring their rejection from the administrator in charge of the training program. The board's factual determination is one to which we must give substantial deference. See, e.g., Humbles v. Board of Fire & Police Commissioners (1977), 53 Ill. App. 3d 731, 368 N.E.2d 1049 (board has considerable discretion to determine whether cause for discipline exists and will not be reversed as long as the findings are related to the re-

quirements of the service and not so trivial as to be capricious).

■■ The board also found that plaintiffs' behavior thwarted departmental efforts to increase the number of paramedics, resulting in a strain on existing paramedics, who were thus required to work shorthanded until the newly certified paramedics could be activated. The departmental order in question was undoubtedly meant to improve the service to the community because of a perceived need for training fire fighters to perform emergency medical services. By the nature of their work, fire fighters must deal with emergency situations involving great physical danger. If plaintiffs deliberately sabotaged their own training, because of their opposition to the policy expressed by the order, their conduct could certainly be viewed as thwarting the Department's aims and thus having an adverse effect on morale, efficiency and discipline within the Department.

### III

Plaintiffs next challenge the legal validity of the fines that the board assessed against them. In brief, plaintiffs contend that the board lacked statutory authority to levy any fines whatsoever, because the applicable State law only permits municipal corporations to issue 30-day suspensions *or* to discharge employees. Under plaintiffs' theory, the fines imposed constitute additional days of suspension, forcing them to work without pay for 70 days, in Kadzielawski's case, and 30 days, in Sajovic's case. Moreover, plaintiffs argue that State law has preempted home rule authority in the area of wage laws and that similar policy rules require uniform disciplinary measures for police and fire personnel of the various municipalities.

The board, on the other hand, cross-appeals from the circuit court's order that reduced the fines. The Village of Skokie, a home rule municipality, has passed an ordinance that specifically allows the imposition of fines, forfeiture of leave time, or any combination. The board therefore takes issue with the trial court's determination that the fines imposed could not exceed the maximum fine imposed for violation of an ordinance.

■ The State law in question provides in relevant part that municipal boards of fire and police commissioners, after a hearing and a finding that an employee is guilty of charges, "may discharge him, or may suspend him not exceeding 30 days without pay." (Ill. Rev. Stat. 1987, ch. 24, par. 10—2.1—17.) Plaintiffs maintain that this provision should be strictly construed so that no punishment in addition to the two specified may be given. They contend that uniformity of discipline promotes the State's interest in maintaining a skilled labor force.

■ Home rule power, however, was created by the Illinois Constitution to allow qualifying municipalities to enact ordinances "pertaining to [their] government and affairs." (Ill. Const. 1970, art. VII, §6(a).) The Village of Skokie, as a home rule municipality, has authority to enact ordinances that differ from or even conflict with State law provisions concerning police and fire personnel matters. (See *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 343 N.E.2d 919; *Cappitelli v. Rodewald* (1988), 171 Ill. App. 3d 875, 525 N.E.2d 1037 (home rule municipality has jurisdiction to enact ordinance superseding section 10—2.1—17 of the Illinois Municipal Code, which governs discipline of fire and police personnel); *Diamond v. Board of Fire & Police Commissioners* (1983), 115 Ill. App. 3d 437, 445, 450 N.E.2d 879 (home rule municipality may adopt ordinance conflicting with State law governing appointment of boards of fire and police commissioners, section 10—2.1—3).) Plaintiffs' reliance on *People ex rel. Bernardi v. Highland Park* (1988), 121 Ill. 2d 1, 520 N.E.2d 316, is misplaced because in that case the court was concerned with the uniformity of the State's prevailing wage law and held that home rule authority could not abrogate the State's pervasive regulatory scheme in that field. In the instant case, the Skokie ordinance involves a local, not statewide, concern for the discipline of public safety personnel in Skokie.

The circuit court found that Skokie had authority to impose fines but held that since fines are penal in nature, the village did not have the right to assess fines of "this magnitude." The court stated that "the fines imposed can in no case exceed those fines which would be legally permissible were the Village of Skokie to prosecute parties or individuals under a village ordinance." After reducing the fines accordingly, the court noted that "to permit fines in excess of those permitted under a village or home rule community ordinance would be contrary to the statute and would be contrary to the rights of the parties involved insofar as their rights to due process in a criminal case."

■ We agree that Skokie's ordinance provided the board with authority to impose a fine on plaintiffs. We further agree that the penal nature of fines is relevant in setting limits. (See section 5—5—2(c) of the Uniform Code of Corrections, which puts unclassified offenses without prison terms into the petty offense category, the maximum fine for which is $500 under section 5—9—1 of the Code (Ill. Rev. Stat. 1987, ch. 38, pars. 1005—5—2, 1005—9—1). See also section 1—2—1 of the Illinois Municipal Code, which limits the imposition of fines to $500 for ordinance violations (Ill. Rev. Stat. 1987, ch. 24, par. 1—2—1).) Neither side probes the circuit court's analogy to ordinance

violations, however, and guiding case law is scant. See generally *Springfield v. Ushman* (1979), 71 Ill. App. 3d 112, 388 N.E.2d 1357 (discussing applicability of the Uniform Code of Corrections section 5—9—1 to ordinance violation carrying penalty of $500 minimum and $1,000 maximum); *City of Urbana v. Fuerst* (1988), 172 Ill. App. 3d 570, 526 N.E.2d 907 (holding that Code provision requiring consideration of offender's ability to pay a fine was not applicable to village ordinance that permitted consecutive fines in building code violation case).

■■ We conclude that the circuit court in the pending case did not abuse its discretion and that there was a rational basis for the reduction of the fines. In so finding, we do not state a rule of law that automatically limits municipal fines to conform to the ones set out here. We merely hold that there is no persuasive reason to disturb the ruling of the circuit court on this issue.

IV

Finally, plaintiffs assert that the Department discriminated against them by not disciplining two other fire fighters who apparently did not attend the paramedic training classes at Christ Hospital. These fire fighters were excused for reasons that do not appear in the record, except for a reference to union negotiations.

■■ There is insufficient evidence of record upon which to base a determination that the other two men were in fact similarly situated to plaintiffs. The record does not contain evidence that the other fire fighters sabotaged their chances for being accepted into the program or that the Department arbitrarily exempted them from paramedic training. Plaintiffs carry the burden of producing sufficient evidence on this issue, which they have not done; nor have they made an offer of proof to state the material facts upon which they rely. Accordingly, we affirm the decision of the circuit court of Cook County in all respects.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.