Andrew WILSON, Plaintiff–Appellee,

v.

CITY OF CHICAGO, Defendant–Appellant, Cross–Claim Defendant,

and

Jon Burge, et al., Defendants, Cross–Claim Plaintiffs.

No. 96–3083.

United States Court of Appeals, Seventh Circuit.

Argued June 5, 1997.

Decided July 21, 1997.

G. Flint Taylor, John L. Stainthorp (argued), Jeffrey H. Haas, People's Law Office, Chicago, IL, for Plaintiff–Appellee.

Lawrence Rosenthal (argued), Mardell Nereim, Benna R. Solomon, Susan S. Sher, Office of the Corporation Counsel, Appeals Division, Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and COFFEY and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

The plaintiff, Andrew Wilson, brought suit under 42 U.S.C. § 1983 against a Chicago policeman, Jon Burge, and the City of Chicago (there were additional defendants, but we can ignore them), claiming violations of Wilson's constitutional rights; Burge had used torture to extract confessions from Wilson and other criminal suspects. A jury exonerated both defendants; we affirmed as to the City but reversed as to Burge. 6 F.3d 1233 (7th Cir.1993). On remand, Wilson was permitted to amend his complaint to add a claim that the City was liable for any judgment he obtained against Burge. The City was out of the case by this time, but Wilson moved to bring it back in, citing 745 ILCS 10/9–102, which provides that a local Illinois government is "directed to pay any tort judgment or settlement for compensatory damages for which it or an employee while acting within the scope of his employment is liable." Judgments were later entered against Burge for $50,000 in compensatory damages and $400,000 in attorneys' fees, and—since the City had already made clear that it would not pay any judgment against Burge, who apparently has no assets—against the City as well, precipitating this appeal. Although the statute speaks of "compensatory damages," the City has not questioned its applicability to attorneys' fees, an issue on which we can find no case.

■ The City argues that there is no federal jurisdiction over Wilson's claim against it because that claim rests entirely on the state statute that we have cited and diversity of citizenship is absent. It cites *Peacock v. Thomas,* —— U.S. ——, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996), for the proposition that a suit to enforce a federal judgment is not within federal jurisdiction merely by virtue of the judgment. What is correct is that once a judgment becomes final and the court has relinquished jurisdiction, a new suit requires a new basis of federal jurisdiction. *Id.* at ——, 116 S.Ct. at 867. So if it is a suit claiming a violation of a settlement agreement resolving a federal case, it cannot be brought in federal court merely by virtue of its origin in that case. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 380–81, 114 S.Ct. 1673, 1676–77, 128 L.Ed.2d 391 (1994); *Unelko Corp. v. Prestone Products Corp.,* 116 F.3d 237, 239 (7th Cir. 1997). But that has nothing necessarily to do with the present case. This is not a new suit against the City; the City was brought in (or rather brought back in, after being dismissed on the authority of *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), as an alleged violator of Wilson's constitutional rights) before the suit against Burge was over, as a party derivatively liable for any judgment against him. If it was proper to bring the City back into the suit in this way, there was no new suit and *Peacock* is inapposite.

■ The joinder of an additional party against whom the plaintiff has a state claim closely related to the claim on which federal jurisdiction is based, as is a state claim ad-

vanced in order to enable the collection of a judgment against the original defendant, is expressly authorized by the statute conferring supplemental jurisdiction on the federal district courts. 28 U.S.C. § 1367(a). See, e.g., *Citizens Electric Corp. v. Bituminous Fire & Marine Ins. Co.*, 68 F.3d 1016, 1020 (7th Cir.1995); *Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir.1995). But that statute is applicable only to suits that began after November 30, 1990, *Channell v. Citicorp Nat'l Services, Inc.*, 89 F.3d 379, 385 (7th Cir.1996); *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir.1995), and this suit began before. The main purpose and effect of the statute were to codify the ancillary and pendent jurisdiction of the federal district courts as it existed before *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), put the kibosh on pendent party jurisdiction, in which a plaintiff adds a defendant against whom he has a claim related to his main claim but unsupported by an independent ground of federal jurisdiction. *Finley* did not, however, sweep away the whole of the ancillary jurisdiction. It recognized the continued validity of that jurisdiction when "necessary to give effect to the court's judgment," 490 U.S. at 551, 109 S.Ct. at 2007, and gave the example of adding as a defendant a person alleged to have received a fraudulent conveyance from an insolvent original party. *Id.* at 551 n. 4, 109 S.Ct. at 2009 n. 4. Subsequent cases recognized the limited impact of *Finley*. E.g., *Washington Hospital Center v. Collier*, 947 F.2d 1498, 1500–01 (D.C.Cir.1991); *Associated Dry Goods Corp. v. Towers Financial Corp.*, 920 F.2d 1121, 1125 (2d Cir.1990).

■ The nonstatutory ancillary jurisdiction that survived *Finley* embraces not only postjudgment collection proceedings but also what in this case is tantamount to a prejudgment collection proceeding, an effort to bring into the case a solvent party to pay the judgment against an insolvent one. What is more, Burge had impleaded the City, seeking indemnity (under state and local provisions discussed later in this opinion) of the judgment rendered against him (see Fed.R.Civ.P. 14(a)) and thus bringing the City back into the case on an unexceptionable application of the post-*Finley* but prestatutory concept of ancillary jurisdiction. See, e.g., *Washington Hospital Center v. Collier, supra; Associated Dry Goods Corp. v. Towers Financial Corp., supra;* cf. *Skevofilax v. Quigley*, 810 F.2d 378 (3d Cir.1987) (en banc); *id.* at 387–89 (concurring opinion).

It is true that the Seventh Circuit cases which allow the joinder of an additional party in a case such as this rely on *Argento v. Village of Melrose Park*, 838 F.2d 1483, 1487–90 (7th Cir.1988), which *Peacock* implies was on the wrong side of a circuit split that the Supreme Court resolved in that case. *See* —— U.S. at —— n. 2, 116 S.Ct. at 866 n. 2. But, if so, it was dicta in *Argento*, rather than the holding, that the Supreme Court slew. *Peacock* involved a fresh suit rather than, as in this case (and *Argento*, which nominally involved four different suits), an enlargement of an existing one. *Matos v. Richard A. Nellis, Inc.*, 101 F.3d 1193, 1195 (7th Cir.1996), suggests, and we now hold, that the *Argento* line of cases survives when the plaintiff is proceeding in his original action rather than by means of a new suit. At least this is so if the additional proceeding does not inject so many new issues that it is functionally a separate case (conceivably a factor in *Argento* itself). The new issue here is whether Burge was acting within the scope of his employment by the City when he tortured Wilson. It is closely related, although not identical, to two of the old issues—whether Burge was acting under color of state law and whether the City could be deemed an actual participant in Burge's misconduct.

■ The City argues that the state statute on which Wilson relied in bringing the City back into the case, section 9–102, comes into play only when a judgment is formally entered against its employee; so Wilson jumped the gun. This would not affect the district court's jurisdiction over his claim against the City; it would just show that the claim lacked merit (more precisely, as we shall see, that it was premature). So let us turn to the merits. There is surely *something* to the City's argument; the City cannot be made to pay a judgment while the liability of its employee is still in question,

and we do not read *Argento v. Village of Melrose Park, supra,* 838 F.2d at 1489–90, to mean that Wilson could have sued the City directly without proceeding against Burge. It does not follow that Wilson could not proceed under section 9–102 until the judgment against Burge became final. The City concedes as it must that if it disobeys the direction in the statute (assuming the statute is applicable to the City), the plaintiff can obtain a judgment against it. Once it became clear, therefore, as it did shortly after we remanded the case, that the City would not pay a judgment when and if one was entered against its employee, the plaintiff, in order to expedite the collection of the judgment, could ask the court to enter a judgment against the City that would take effect when and if a judgment against Burge was entered and no longer contestable.

In effect Wilson was asking the court to enter a declaratory judgment against the City, a typical move when an insurer (as the City in effect is of the judgment against Burge) is in the picture, and one not invalidated by its conditional character. E.g., *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 680–82 (7th Cir.1992); *Eureka Federal Savings & Loan Ass'n v. American Casualty Co.,* 873 F.2d 229, 231–32 (9th Cir. 1989); *Rubins Contractors, Inc. v. Lumbermens Mutual Ins. Co.,* 821 F.2d 671, 673–75 (D.C.Cir.1987); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1451, pp. 410–11 (2d ed.1990). In fact Wilson asked for just this kind of declaratory relief, and the omission to describe it in these terms in the judgment that the district court entered is a detail.

We would be more sympathetic to the City's argument if we could see any benefit from forcing Wilson to wait until a final judgment was entered against Burge and made incontestable by exhaustion of his appellate remedies. It would still be possible for Wilson to seek to collect the judgment by ancillary proceedings against the City. Fed. R.Civ.P. 69(a). All that would be involved would be delay and maybe a little more paperwork.

■ The Illinois statute that enabled Wilson to proceed against the City is by its terms applicable only if the employee was acting within the scope of his employment, that is, only if the employer would be liable for the employee's acts under the principle of respondeat superior; and the City argues that Burge was not. The argument borders on the frivolous. This is not a case in which a police officer, while engaged on police business, commits a wrong designed to advance his purely private interests, as in our recent case of *West v. Waymire,* 114 F.3d 646 (7th Cir.1997). A police officer committed statutory rape upon a girl in the course of enforcing a curfew—yet we said that he was acting within the scope of his employment. *Id.* at 649; see also cases cited there. *West* was not a case governed by Illinois law, and we won't speculate on how it might be decided under that law. Burge, unlike the defendant in *West's* case, was not pursuing a frolic of his own. He was enforcing the criminal law of Illinois overzealously by extracting confessions from criminal suspects by improper means. He was, as it were, *too* loyal an employee. He was acting squarely within the scope of his employment. *Argento v. Village of Melrose Park, supra,* 838 F.2d at 1494–95, held that a post-arrest beating was within the scope of the officer's employment under section 9–102. See also *Bryant v. Livigni,* 250 Ill.App.3d 303, 188 Ill.Dec. 925, 619 N.E.2d 550, 559–60 (1993); *Coleman v. Smith,* 814 F.2d 1142, 1149–50 (7th Cir.1987) (Illinois law); *Graham v. Sauk Prairie Police Comm'n,* 915 F.2d 1085, 1095–96 (7th Cir.1990) (Wisconsin law).

■ The City claims, however, to have an ordinance that by virtue of the "home rule" provision in the Illinois constitution exempts the City from section 9–102. The ordinance, which furnished the basis for Burge's impleading the City, provides that when a judgment is rendered against a police officer for personal injury or property damage resulting from the performance of his duties as an officer, the City's corporation counsel "shall certify such judgment to the city comptroller for payment by the city, when, in his opinion, such member of the police department *has not been guilty of wilful misconduct,*" Chi.

Munic. Code § 2'020(d) (emphasis added), as Burge clearly has.

The Illinois constitution provides with immaterial exceptions that a municipality "may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare." Art. 7, § 6(a). Read literally this provision would allow Chicago to opt out of the entire statutory and common law of Illinois; but it is not read literally. Home-rule provisions are a response to an old rule that limited municipalities to exercising powers expressly or by necessary implication granted to them by the state's legislature. *City of Evanston v. Create, Inc.,* 85 Ill.2d 101, 51 Ill.Dec. 688, 691–92, 421 N.E.2d 196, 198–99 (1981); see also *Scadron v. City of Des Plaines,* 153 Ill.2d 164, 180 Ill.Dec. 77, 81, 606 N.E.2d 1154, 1158 (1992); *Timothy Christian Schools v. Village of Western Springs,* 285 Ill.App.3d 949, 221 Ill.Dec. 261, 266, 675 N.E.2d 168, 173 (1996). Home rule allows a municipality to regulate in areas that the state legislature has not thought to regulate, provided the municipal regulation concerns areas of local rather than statewide concern. *Village of Bolingbrook v. Citizens Utilities Co.,* 158 Ill.2d 133, 198 Ill.Dec. 389, 391–92, 632 N.E.2d 1000, 1002–03 (Ill.1994); *City of Evanston v. Create, Inc., supra; National Advertising Co. v. City of Rolling Meadows,* 789 F.2d 571, 576 (7th Cir.1986). The municipality can, for example, promulgate an ordinance banning the possession of handguns, since there is no statewide law comprehensively or preemptively regulating such possession, as long as the ordinance is limited to the possession of handguns within the municipality's borders. *Kalodimos v. Village of Morton Grove,* 103 Ill.2d 483, 83 Ill.Dec. 308, 318–19, 470 N.E.2d 266, 276–77 (1984).

The municipality's power to *preempt* state law—what the ordinance here, as the City interprets it, is trying to do to section 9–102—is generally limited to the internal affairs of municipal government, such as the relation between the municipality and its employees. *Kadzielawski v. Board of Fire & Police Commissioners,* 194 Ill.App.3d 676, 141 Ill.Dec. 338, 343, 551 N.E.2d 331, 336 (1990). In these areas of intensely local governmental concern the state legislature can be presumed to be content to let the municipality have its way, *People ex rel. Bernardi v. City of Highland Park,* 121 Ill.2d 1, 117 Ill.Dec. 155, 163, 520 N.E.2d 316, 324 (1988) (dissenting opinion), though only provisionally, since the legislature can by a simple majority override municipal ordinances promulgated under the home-rule power, with some exceptions not relevant to this case. Ill. Const. art. 7, §§ 6(g)-(*l*); *Nevitt v. Langfelder,* 157 Ill.2d 116, 191 Ill.Dec. 36, 43, 623 N.E.2d 281, 288 (1993).

The City appeals to its provisional preemptive home-rule power by describing the ordinance in question as one that deals with the relation between the City and its employees, namely the employee's right to be indemnified by the City should a judgment be entered against him that grows out of his official duties. This is an accurate description, but is irrelevant. We can see this by a glance at the state statute that the ordinance seems intended to track, 65 ILCS 5/1-4-5, which imposes on the City essentially the same duty of indemnification as the ordinance. Read in light of the statute, the ordinance merely establishes the procedure for complying with the statute. And the statute, as we pointed out in *Argento,* coexists with—it does not contradict or subvert—section 9–102. 838 F.2d at 1493–94, citing *Arnolt v. City of Highland Park,* 52 Ill.2d 27, 282 N.E.2d 144, 146–48 (1972); see also *Mattila v. City of Belleville,* 184 Ill.App.3d 49, 132 Ill.Dec. 485, 539 N.E.2d 1291 (1989). Section 1-4-5 confers a right on the employee; section 9–102 confers a right on the victim of the employee's tort. The City can by contract with the employee, save as limited by section 1-4-5 or by the ordinance, shift to him (so far as he has assets) the burden of its liability to the tort victim. But it cannot shuck the liability itself. It must pay the victim, and then seek what relief it can against the employee who is responsible for the City's having to pay the victim of the employee's tort. So it is irrelevant whether the ordinance is within the City's home-rule power, and we offer no view on the question.

■ The City argues that the doctrine of res judicata bars the plaintiff's claim under section 9–102 because he could have included the claim in his original complaint. This is alternative pleading with a vengeance, since the City's primary position is that the plaintiff could *not* have included the claim in his original complaint—that he could not advance it until a final judgment was entered against Burge, because section 9–102 comes into play only then. The doctrine of res judicata does not require you to file a claim before the law allows you to file it.

■ But by rejecting the City's position that a claim under this section is premature until a judgment is entered against the employee, we make the res judicata argument at least plausible. The judgment we affirmed the last time this case was before this court, the judgment in favor of the City based on the *Monell* doctrine, which confines municipal liability under 42 U.S.C. § 1983 to cases in which the municipality is an active participant in the constitutional tort, barred Wilson from filing a claim against the City arising out of the same facts as the original claim. Two claims arising from the same facts are one claim for res judicata purposes, and may not be split, whether by making each claim the subject of a separate suit, *Creek v. Village of Westhaven,* 80 F.3d 186, 190 (7th Cir.1996); *Herrmann v. Cencom Cable Associates, Inc.,* 999 F.2d 223, 226 (7th Cir.1993); *Lundborg v. Phoenix Leasing, Inc.,* 91 F.3d 265, 270 (1st Cir.1996), or, if the previous judgment was rendered in a suit that continued against another defendant, by adding the new claim by way of an amendment to the original complaint. We cannot find a case on the latter point, perhaps because it is a little unusual for a judgment to be rendered without winding up the litigation and thus precluding amending the complaint; but it seems clear to us as a matter of principle. (It is equally clear that if there is no judgment, there is no preclusion.) Only it does not describe the situation here. Wilson's section 9–102 claim arises out of the City's decision not to pay Wilson any judgment that he obtained against Burge, and that decision was made after the judgment was entered.

■ The rule against splitting your claim does not require you to consolidate with that claim claims against everyone who might be derivatively liable for the judgment against the defendant. *Pasco Int'l (London) Ltd. v. Stenograph Corp.,* 637 F.2d 496, 503 (7th Cir.1980); *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 412 (3d Cir.1993). Such a rule would make litigation really unmanageable. See 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4407, pp. 51–52 (1981). This result is blocked in cases like *Pasco* and *Janney* by the rule that potential indemnitors are not indispensable parties and so need not be joined in the suit against the indemnitee (Burge). This case is unusual because the potential indemnitor was a party to the original suit. But the claim against the City as a violator of Wilson's constitutional rights is distinct from his claim against the City under the indemnity statute, and so there was no splitting.

■ Last and least, the City argues that to allow Wilson to use section 9–102 to affix liability to it violates the Rules Enabling Act, 28 U.S.C. § 2072(b), by giving substantive force to a rule of procedure, namely Fed. R.Civ.P. 69(a). The City was held not to be liable to Wilson under 42 U.S.C. § 1983 because it had not been complicit in his wrongdoing; by using Rule 69(a) in conjunction with the state statute, Wilson has succeeded, the City argues, in overturning the judgment exonerating it. Not so. At most the rule is merely the vehicle by which Wilson is able to litigate a state claim in federal law. He could just as well have sued the City in state court. Rule 69(a) affected only the choice of forum, not his substantive rights against the City. But for completeness we add that Rule 69(a) may not even be in play in this case, for it specifies the procedures for collecting a judgment *after* the judgment has been rendered. Authority to bring the City back into the case and obtain a judgment against it simultaneous with the judgment against Burge was based on the ancillary jurisdiction of the federal courts interpreted in light of settled principles of declaratory relief. Rule 69(a) is based ultimately on ancillary jurisdiction, *Argento v. Village of Melrose Park,*

*supra*, 838 F.2d at 1487; *Skevofilax v. Quigley, supra*, 810 F.2d at 385, 387; *id.* at 387–389 (concurring opinion); *Sandlin v. Corporate Interiors Inc.*, 972 F.2d 1212, 1215 (10th Cir.1992), but it has a narrower office.

AFFIRMED.