**Mike YANG, Plaintiff,**

**v.**

**The CITY OF CHICAGO, Defendant.**

**No. 92 C 0054.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 18, 1998.

Mary Allison Despard, Littler Mendelson, P.C., Chicago, IL, for Mike Yang.

Aimee B. Anderson, City of Chicago, Department of Law, Chicago, IL, for City of Chicago.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Earlier this year the Seventh Circuit Court of Appeals pointedly noted that plaintiff Mike Yang ("Mr.Yang") has waited long enough for this lawsuit to come to an end. *See Yang v. City of Chicago,* 137 F.3d 522, 527 (7th Cir.1998). Today Mr. Yang's long wait will come to an end.

### RELEVANT FACTS

This lawsuit, which was originally filed more than six years ago on January 3, 1992, has already had two journeys to our Court of Appeals. The underlying unfortunate facts that led to Mr. Yang's civil rights suit were succinctly summarized by Judge Bauer for the second time in his last opinion. 137 F.3d at 523. These facts will not be fully repeated herein. It is sufficient to state that Mr. Yang previously established that then-Chicago Police Officers Brown and Hardin violated his civil rights when Officer Brown robbed and assaulted Mr. Yang instead of properly investigating a burglary that had occurred at his store. Officer Hardin's liability was established because of his failure to intervene and prevent Officer Brown's outrageous behavior. *See Yang v. Hardin,* 37 F.3d at 282, 286 (7th Cir.1994). Both officers were subse-

quently fired by the City and criminally prosecuted.

After the remand from the Seventh Circuit's 1994 opinion, the district court entered judgment against Officer Hardin and granted plaintiff's petition for indemnification pursuant to 745 ILCS 10/9–102.[1] The district court later ruled that it lacked jurisdiction over Yang's petition for indemnification and vacated its prior order granting the petition. The court also denied Yang's fee petition against defendant Hardin. Yang appealed both decisions. In an opinion issued earlier this year, the Seventh Circuit again reversed the district court and ruled that Officer Hardin's actions were clearly within the scope of his employment. The Court specifically found that the City was derivatively liable for Mr. Yang's judgment against Officer Hardin. 137 F.3d at 526–27.

In its remand order, the Seventh Circuit directed the district court to dispose of the remaining disputes in an expeditious manner and enter an appropriate finding on Mr. Yang's fee petition. On remand, this case was eventually reassigned to this Court on July 27, 1998. Unfortunately, this Court's attempt to comply with the directives of the Seventh Circuit have been hampered by the City's consistent efforts to delay an end to this litigation.

On July 30, 1998, pursuant to 745 ILCS 10/9–102 and in full compliance with the law of the case, this Court entered final judgment against the City of Chicago, over the City's objections. On the same date, this Court set an expedited schedule to resolve the sole remaining issue of Mr. Yang's attorneys' fees. The City consistently failed to meet this Court's repeated indulgences and only filed its objections and response after needless, aggravated proceedings before this Court. The City's belated response was finally filed after Mr. Yang requested this Court to summarily grant his pending attorney fee petition. Although this Court has full discretion to summarily reject the City's belated response in light of the entire history

---

1. The district court denied Mr. Yang's petition for indemnification pursuant to § 9–102 against Officer Brown. The court found that Officer Brown's theft and subsequent assault of Mr.

Yang were not at all related to his duties as a police officer and were entirely for his own personal benefit.

of this litigation, we instead exercise our discretion and fully consider all of the arguments raised by the City in its brief opposing Mr. Yang's petition for attorneys' fees and costs against the City under 745 ILCS 10/9–102.

## DISCUSSION

### I. *The City's Liability For Prevailing Civil Rights Plaintiff's Attorney Fees and Costs*

Not surprisingly, in a case where virtually every effort by Mr. Yang to collect any funds from the City has been hotly contested, the City has decided to question the appropriateness of paying attorneys' fees and costs to a prevailing civil rights plaintiff under § 10/9–102 of the Illinois Tort Immunity Act ("the Act"). Section 9–102 of the Act simply states that a local Illinois government is "directed to pay any tort judgment or settlement for compensatory damages for which it or an employee while acting within the scope of his employment is liable." *Id.* Prior decisions of the Seventh Circuit Court of Appeals have affirmed awards of attorneys' fees and costs under the Act in situations where the municipal defendant did not question the applicability of § 9–102 to attorneys' fees and costs. *See Wilson v. City of Chicago*, 120 F.3d 681, 683 (7th Cir.1997); *Argento v. Village of Melrose Park*, 838 F.2d 1483, 1493 n. 15 (7th Cir.1988). Yet, the Court expressly noted in *Wilson* that there was an absence of any case law on the issue of whether civil rights attorneys' fees were encompassed by the statutory language of 745 ILCS 10/9–102. 120 F.3d at 683.

The City asserts that given the absence of case law the doctrine of strict statutory construction requires this Court to find that prevailing civil rights plaintiffs' attorneys' fees are not covered by the term "tort judgment or settlement for compensatory damages." 745 ILCS 10/9–102. In support of its argument, the City relies, by analogy, on the Seventh Circuit's decision in *Kapitan v. City of Gary, Indiana*, 12 F.3d 678 (7th Cir.1993) which interpreted Indiana law. In *Kapitan*, the Court held that a discretionary municipal indemnity provision did not allow a subordinate public works safety board to obligate the City of Gary to indemnify a civil rights' judgment. The City of Gary had previously invoked its discretion under Indiana law and decided that paying the judgment was not in its best interest. Judge Easterbrook duly noted that the Indiana statutes only provided for voluntary indemnification because the laws explicitly stated that a governmental entity shall pay judgments against employees only if the governing body determines that it is in the best interest of the entity. 12 F.3d at 679.

Judge Easterbrook's decision in *Kapitan* simply does not provide any assistance to the City's position in this case. First, the statutory language in the Indiana statutes is distinct from the mandatory and non-discretionary language of § 9–102. In this case, the law of the Seventh Circuit has already established that the City is derivatively liable for plaintiff's judgment against Officer Hardin. The only issue is whether Mr. Yang's attorneys' fees and costs are included in the term "tort judgment" as used in 745 ILCS 10/9–102. The *Kapitan* analysis is not relevant to this question because there is no indication that the Illinois legislature ever intended to give any discretion to local governmental units to avoid paying awarded attorneys' fees or that such fees are not included in the broad terminology of "tort judgment or settlement for compensatory damages" as used in 745 ILCS 10/9–102.

The Illinois Supreme Court has recently provided courts with some guidance to interpret the Act. This Court's primary goal is to ascertain and give effect to the intention of the Illinois legislature. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill.2d 335, 339, 230 Ill.Dec. 11, 692 N.E.2d 1177 (1998). In so doing, it is not appropriate to depart from the plain language of the Act by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. *Id.*

The Act itself broadly defines a "tort judgment" to mean "a final judgment founded on an injury ... proximately caused by a negligent or wrongful act or omission of a local public entity or an employee of a local public entity while acting within the scope of his

employment." 745 ILCS 10/9–101(d). The term "injury" is defined as "death, injury to a person, or damage to or loss of property" and expressly includes "any injury alleged in a civil action, whether based upon the Constitution of the United States or the Constitution of the State of Illinois, and the statutes or common law of Illinois or the United States." 745 ILCS 10/1–204 (1997).

The City strongly asserts that these definitions, especially when coupled with the Illinois common law distinction between damages and the recovery of attorneys' fees and costs, requires this Court to follow the American Rule and not automatically award attorneys' fees and costs as part of its judgment in this case. While the City's argument would be convincing if this were a common law negligence case for which no statutory award of fees exists, it simply is not persuasive in civil rights cases which statutorily provide for an award of fees and costs as part of the overall judgment received by the plaintiff. *See e.g., Littlefield v. McGuffey*, 979 F.2d 101, 104 (7th Cir.1992) (costs can include attorneys' fees under Illinois law because § 1988 expressly provides for it).

■ Pursuant to § 1988, a prevailing plaintiff in a civil rights action is entitled to collect reasonable attorneys' fees and costs. 42 U.S.C. § 1988. Since a prevailing plaintiff's attorneys' fees are expressly authorized by statute, they are normally included in the total judgment awarded. *See Miller v. Artistic Cleaners*, 153 F.3d 781 (7th Cir.1998). An award of fees and costs to a prevailing civil rights plaintiff is normally part of the "judgment" that makes up full compensation to the victim. Given that federal law expressly authorizes attorneys' fees and costs for prevailing civil rights plaintiffs, this Court concludes that such awards fall within the express definition of the terms "tort judgment" and "injury" as defined for purposes of 745 ILCS 10/9–102.

Any other interpretation of 745 ILCS 10/9–102 would be fundamentally flawed because the very legislative purpose of the Act, as confirmed by the broad language of the Act and this Court's review of the sparse legislative history, is to respect the rights of the injured person to fully recover for certain injuries suffered because of local officials who have abused their official powers. Indeed, the Seventh Circuit noted in *Wilson* that § 9–102 "confers a right on the victim of the employee's tort." 120 F.3d at 686. The Illinois Supreme Court has also indicated that the Act was adopted to mitigate the harshness and injustice of the sovereign immunity doctrine and established "the general principle that local governmental units are liable in tort, but limited this liability with an extensive list of immunities based on specific government functions. Based on these developments, governmental units are liable in tort on the same basis as private tortfeasors unless a tort immunity statute imposes conditions upon that liability." *In re Chicago Flood Litigation*, 176 Ill.2d 179, 190, 223 Ill.Dec. 532, 680 N.E.2d 265 (1997).

Despite the extensive list of immunities provided by the Act, the *only recovery which was excluded* from the broad mandatory indemnity provided by the Act was punitive ·damages and that was the reason for the insertion of the words "compensatory damages for" in 1986. This 1986 amendment was a direct reaction to the Seventh Circuit's decision in *Kolar v. County of Sangamon*, 756 F.2d 564 (7th Cir.1985) which held that punitive damages could be recovered against a local county because § 9–102 implicitly waived the county's immunity from punitive damages. Unlike the issue of punitive damages, the Illinois legislature has not seen fit to take any action to specifically exclude attorneys' fees and costs to prevailing civil rights plaintiffs despite two opinions from the Seventh Circuit that affirmed awards of fees and costs pursuant to the statute and explicitly noted the Act did not contain precise language on this issue.

Yet, the fact remains that an award of attorneys' fees to a prevailing civil rights plaintiff is expressly authorized under federal law and this award plays an important part in assuring that civil rights laws are enforced. In fact, in many civil rights cases it is not unusual for the award of attorneys' fees to exceed the amount of compensatory damages recovered. *See City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (affirmed attorneys' fees

of $245,456.25 following a damage verdict of $33,350); *Wilson*, 120 F.3d at 681 (city held liable for judgment of $50,000 in compensatory damages and $400,000 in attorneys' fees). Furthermore, even the settlement of civil rights claims factors in the elements of attorneys' fees and costs. An award of attorneys' fees and costs to a successful civil rights plaintiff helps to make the plaintiff whole for having suffered a constitutional injury. Section 1988 therefore helps to enforce the very purpose of § 1983 which is to deter state actors from using a "badge of authority" to deprive individuals of rights guaranteed by the Constitution. *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir.1998) (quoting *Wyatt v. Cole*, 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992)). A ruling that would make the City responsible for damages to a prevailing civil rights plaintiff, but not for attorneys' fees and costs, would simply not further the legislative purposes of § 9–102 or 42 U.S.C. §§ 1983 and 1988.

Instead, this Court holds that the City is liable in tort on the same basis as private tortfeasors. Since an unsuccessful defendant in a federal civil rights case is liable for attorneys' fees and costs to the harmed plaintiff, the Act requires that the City be held equally liable if all the other requirements in the Act are met. Because attorneys' fees and costs are part of statutory federal law they are included in the broad definition of "tort judgment" as that term is used in 745 ILCS 10/9–102.

One final observation about the City's obstinate resistance to paying for its former employees' official malfeasance is in order. The City, in its response, consistently represented that no cases address the issue of whether the City is obligated to pay attorneys' fees under § 9–102. Yet, the City is well aware that Judge Grady's unpublished opinion in this very case already decided that attorneys' fees and costs, over the City's objections, were included in § 9–102's definition of tort judgment and, therefore, that Mr. Yang was entitled to attorneys' fees and costs. *Yang v. Brown*, 1996 WL 450805, at

*5 n. 8 (N.D.Ill. Aug. 6, 1996). An argument could be made that this ruling is the law of the case. *See Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case"). It is unfortunate that the City did not bring Judge Grady's unpublished decision to the direct attention of this Court.[2] While this Court understands why the City is upset about using its public funds to pay for a civil rights violation caused by one of its former employees, this disagreement with litigation decisions should not have been allowed to affect the professionalism of the manner in which the City's position was defended before this Court.

## II. Mr. Yang Is Only Entitled To Reasonable Attorneys' Fees and Costs

Having determined that Mr. Yang is legally entitled to attorneys' fees and costs under § 9–102, we next turn to the difficult question of what fees and costs are reasonable in this unusual and protracted case.

The City asserts that it is inappropriate to award the total fees and costs of over $280,-000 sought by Mr. Yang in this case because his efforts were minimal with respect to the City. The City complains that virtually all of the time expended by Mr. Yang related to his post-judgment supplemental efforts to have the City acknowledge its indemnity responsibilities pursuant to § 9–102. Of course, the City ignores the fact that its own extraordinary efforts to avoid any liability in this case unduly prolonged these proceedings. The City also complains that Mr. Yang's petition is replete with duplicative fees, exorbitant and unnecessary fees, inadequate documentation, excessive research, and fees sought to prosecute state law claims and non-compensable collection efforts that are legally unrelated to his successful § 1983 claims.

██ Under § 1988, a prevailing plaintiff is entitled to "reasonable" attorney's fees and costs. 42 U.S.C. § 1988. In *Hensley v. Eck-*

**2.** Ironically, the City has relied on this unpublished order for other propositions that are favorable to its position on the amount of overall attorneys' fees to be awarded in this case and attached a copy of Judge Grady's unpublished opinion to its opposition brief.

*erhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court developed a two-step process to determine reasonable attorney's fees for a prevailing civil rights plaintiff. The first step is for the Court to determine the number of hours reasonably spent on the litigation and a reasonable or prevailing hourly rate for this work. The product of these two figures is commonly called the "lodestar" figure. The second step is for the court to adjust the lodestar figure in light of the twelve factors identified in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir.1974): (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. 1933.

■ In this case, Mr. Yang's attorneys are seeking a total of $287,809.77 in attorneys' fees and costs. This total is composed of a lodestar figure of $225,862.75; $10,774.42 in costs and a requested award of interest (at the prime rate) of $51,172.60 to upwardly adjust the award of attorneys' fees for the delay in payment. This Court has carefully studied the attorneys' fee petition submitted by Mr. Yang's attorneys, as well as the City's specific objections to the fees claimed by Mr. Yang's attorneys. In the first instance, this Court concludes that the hourly rates sought by Mr. Yang's attorneys are reasonable and customary rates for civil rights work in the Chicago area. All of these rates are less than $200 an hour. The vast majority of the work undertaken in this case was at a rate less than $135.00 per hour. The Court's scrutiny of the time records submitted by the firm representing Mr. Yang, however, does reveal that certain hours were not reasonably expended in this delayed lawsuit. At times, Mr. Yang's attorneys did spend excessive time by (1) preparing various research memorandums; (2) overstaffing the case; (3) making up for attorney turnover; (4) participating in unnecessary attorney conferences; and (5) working on matters which were not directly relevant to the issues in this lawsuit. After a careful review of the submitted time records, the Court has determined that total reductions of $34,234.00 must be made to the requested lodestar of $225,862.75 to eliminate all unnecessary work.[3] Thus, the Court's revised lodestar amount for Mr. Yang's total reasonable attorneys' fees is $191,628.75.

The Court's evaluation of this revised lodestar amount, in light of the *Johnson* factors outlined in *Hensley,* leaves it with the firm conclusion that no further reductions or increases should be made. The City strenuously argues that the underlying liability judgments against its two former police officers were obtained in default judgments which involved little effort by Mr. Yang. Yet, the Court is mindful that Mr. Yang's litigation efforts in this case will benefit all civil litigants by establishing important precedents, the scope of liability under 42 U.S.C. § 1983, and the interpretation and applicability of § 9–102 of the Act. In particular, this Court is well aware that the initial Court of Appeals' decision in *Yang v. Hardin* has played a seminal role in clarifying a police officer's civil rights liability for failure to intervene.

■ In the end, this Court believes that a fee award of $191,628.75 is adequate and substantial compensation for the work and effort undertaken in this case. This Court also does not believe that an award of interest on its award of reasonable attorneys' fees

---

**3.** The Court has not specified all of the reductions because they are too numerous to detail. It is sufficient to state that each individual reduction or disallowance involved each of the various attorneys who were assigned to this case. The Court thereafter reduced the unnecessary and excessive work by time increments in accordance with the hourly rate charged by each attorney. The Court will, if requested by one of the parties, issue an appendix to the opinion that details these reductions.

is necessary. Instead, the Court concludes that the use of the law firm hourly rates charged in this case adequately compensates Mr. Yang's counsel. Furthermore, despite the unfortunate delays which have occurred in this case, the Court remains mindful that the final judgment it entered in this case against the City is less than four months old. The Court will retain its jurisdiction to award any appropriate post-judgment interest if further delays in actually paying the total judgment occur in this case. The Court is convinced that the potential award of post-judgment interest represents a better use of its discretion than a prejudgment interest award on the reasonable attorneys' fees awarded today.

The Court has also closely reviewed the itemization of the $10,774.42 in costs sought by Mr. Yang. The Court finds that these costs were reasonable and necessary and overrules the City's objections to portions of these costs.

### CONCLUSION

The Court commends Mr. Yang's principal attorney, John Y.E. Lee, for his tireless and consistently strong advocacy on behalf of Mr. Yang in this seemingly endless litigation. Mr. Lee's commitment to Mr. Yang is a fine example of when our legal profession brings real meaning to the phrase "equal justice under law".

It is way beyond the time for this controversy to end. The Court remains hopeful that the total judgment in this case will be paid quickly so that Mr. Yang's faith in his country's legal system can be restored.